McCrubb vs..Bray.

## McCrubb vs. Bray.

ADMINISTRATOR'S SALE. (1) *Void where statutory conditions not complied with.* (2) *Three weeks notice, construed.* (3) *Sale void if made in administrator's interest.* (4) *Effect of administrator's interest, as to subsequent* bona fide *purchaser, not decided.*

EJECTMENT: MESNE PROFITS. (5, 6) *Case stated; instructions to the jury.* (7) *Mesne profits assessed to time of trial.* (8) *Allowed during plaintiff's minority.* (9) *Money expended for plaintiff's support, how recovered.* (10) *Improvements by defendant recoverable under " Betterment Act."*

1. If any one of the conditions mentioned in sec. 62, ch. 94, R. S. (Tay. Stats., 1193, § 62) is wanting, or does not appear by direct proof or legal inference, a sale of land made by an administrator, executor or guardian, under that chapter, is void.

2. The statute requires *notice* of such a sale to be posted and published " for three weeks successively next before such sale." *Held*, that three weeks (or twenty-one days) must intervene between the first publication and posting of the notice and the day of sale, or the sale will be void.

3. The statute (sec. 27) provides that the executor, administrator or guardian by whom the sale is made, shall not directly or indirectly purchase or be interested in the purchase of the real estate sold, and that all sales made contrary to that provision shall be void. One of the conditions of a valid sale specified in sec. 62 is, that the premises must be held by " one who purchased in good faith." Where an administrator's account against an estate had been allowed at $1,500, and the land was sold for the same amount, to a stranger, and immediately conveyed by the latter to the administrator for the same amount, and the administrator immediately filed a receipt to the estate for that amount: *Held*, that the purchase was not in good faith, and the sale was void.

4. Whether, where the administrator was interested in the sale of land of the estate sold by him under a valid license, the sale would be held void as against a *bona fide* purchaser to whom it had been subsequently conveyed, is not here decided.

5. Defendant in ejectment claimed the land under a void administrator's sale made by himself nominally to another person. Plaintiff claimed as heir. Before his appointment as administrator, defendant had intermarried with the widow of the intestate; plaintiff was then and for many years after a minor, and his mother had been appointed and qualified as his guardian. Defendant held the premises in dispute for over six years adversely to plaintiff, and neither the latter nor his guardian had possession thereof, or received or had any control over the *mesne profits*, as such. *It seems*, that it would not have been error if the court had instructed the jury absolutely that plaintiff was entitled to recover the mesne profits, under the statute (R. S., ch. 141, sec. 13).

6. The court submitted to the jury the question whether the proceeds of the land had been received by plaintiff's guardian, and applied for his benefit, and charged that, if so, plaintiff was not entitled to recover mesne profits which accrued before the commencement of the action. *Held*, that if there was any error in this, it was in defendant's favor, and is no ground for disturbing the judgment on his appeal.

7. Damages for *mesne profits* should be assessed *to the day of trial*.

8. Plaintiff recovering in ejectment may claim mesne profits which accrued *during his minority*.

9. If the defendant in ejectment has expended money for the maintenance of the plaintiff, he may recover it in some appropriate proceeding, but not in the ejectment suit.

10. If defendant in ejectment is entitled to be paid for improvements made by him on the land in dispute, his remedy is under the "Betterment Act."

APPEAL from the Circuit Court for *Iowa* County.

This action was brought to recover the undivided one-half of certain real estate. The plaintiff claims as one of two heirs of John McCrubb, who died intestate in 1855, seized of both moieties of the land described in the complaint. The intestate left a widow, and two infant children, of whom the plaintiff is one. The plaintiff became twenty-one years of age in December, 1871, and commenced this action in April, 1872.

The defendant claims title under a deed executed by the

administrator of the estate of John McCrubb, and the facts re-
lating to the execution of such deed and to the title claimed
by the defendant, so far as it is necessary to state them, are as
follows :

Before any proceedings were taken in the county court to
administer the estate of McCrubb, his widow intermarried with
the defendant. On the 7th of January, 1857, she presented
her petition to the county court of Iowa county, praying that
administration of such estate be granted to the defendant. Af-
ter due notice of the hearing of such petition, the prayer there-
of was granted, and the defendant having filed the oath and
given the bond required by law, letters of administration were
duly issued to him by the county court, which bear date Feb-
ruary 3, 1857. On the same day appraisers were appointed,
who afterwards returned an inventory and appraisement of the
estate, from which it appears that the estate consisted of 305
55-100 acres of land in that county, appraised at ten dollars
per acre ; also of personal property selected by the widow pur-
suant to the statute, to the amount of over $300, and other
personal property (excluding grain and provisions), appraised
at over $400. February 1, 1858, the county court extended
the time for administering the estate six months from that
date.

No further proceedings in the matter of the estate were had
in the county court until December 6, 1861, when defendant
presented to the court what purported to be his final account
of his administration, in which he states that he has paid out
on account of the estate $946.59. This account is very im-
perfectly itemized, but it shows that $117.59 of the amount
was for taxes ; $100 for building a barn ; $502.50 for breaking,
fencing and grubbing ; $100 for funeral expenses and tomb-
stone ; $35 for physician's bill ; and $55 on two other accounts,
but what they were for, or when or by whom made, does not
appear. The balance consists principally of probate and attor-
ney's fees, and costs. The defendant further stated in such

account, that ever since he was appointed administrator he had
devoted his entire time, skill and labor to the cultivation and
improvement of the farm, except the time required in the dis-
charge of his duties as administrator, and claimed compensation
therefor.    On January 6th, after due notice of hearing had
been given, the county judge made an order allowing such ac-
count at $1,500.

On the 11th of January, 1862, the defendant presented to
the court a petition for license to sell the land of which that in
controversy is a moiety, and, after due publication of notice
of the hearing thereon, the prayer of the petition was granted.
Notice of sale of such land by the administrator was there-
upon given by posting the same in three of the most public
places in the town in which the land was situated, on the 28th
of February, 1862, and by publication thereof in a newspaper
of Iowa county on the 27th of the same month and on the 6th
and 13th days of the following month.    The sale was noticed
to take place on March 14, 1862, on which day the defendant
sold the premises to one Patrick McDonough for $1,500, and
on the following day executed to him a conveyance thereof in
the usual form of administrators' deeds.    On the same 15th
day of March, McDonough conveyed said land to the defend-
ant for the consideration expressed in the deed, of $1,500.    On
the day of the sale the county judge made an order confirm-
ing the sale; on the next day the defendant filed a receipt to
the estate for $1,500; and on the 17th of the same month the
judge made an order reciting that the estate had been fully
administered, and discharging the defendant from the further
administration thereof.

It may be here stated that on the 30th of December, 1861,
Mrs. Bray was appointed by the county judge the general
guardian of her children and duly qualified as such, and that
afterwards she filed an inventory of the property of her wards,
consisting of the lands, not sold by the administrator, of which
John McCrubb died seized.    No mention is made therein of

personal property. This inventory is filed by the county judge, "Approved and recorded March 31, 1862."

The foregoing facts appear from the records and papers in the office of the county judge pertaining to such estate, all of which were read in evidence on the trial of the action.

The circuit judge held that the administrator's deed was void, and only submitted to the jury the question of the amount of mesne profits which the plaintiff was entitled. to recover. On that subject the court instructed the jury as follows:

"In respect to mesne profits, if the jury find that the farm was as much under the management and control of Mrs. Bray, the mother and the general guardian of the plaintiff, as it would have been had the defendant never procured a deed for it — that the land was cultivated and the proceeds applied to the plaintiff's benefit, just as it would have been had not the defendant obtained such deed,— then the plaintiff is not entitled to mesne profits, except after the commencement of this action.

"If it appears that the plaintiff was deprived, through the defendant's deed and claim, of such benefits of the mesne profits as his guardian, his mother, would have given him, and to which he was rightfully entitled, in his support, maintenance and education, to the extent of this deprivation the plaintiff is entitled to recover mesne profits. He is entitled to the mesne profits proven after the commencement of this action. The jury cannot go back in any case beyond six years."

The jury found for the plaintiff, and that he was the owner in fee of the lands described and claimed in the complaint, and assessed his damages and the mesne profits at $480. After a motion for a new trial had been overruled, judgment was entered on the verdict. The defendant appealed.

*Cothren & Lanyon*, for appellant, contended, among other things, that the notice of the sale was sufficient. "The general rule in respect to notices is, that mere informalities do not

vitiate them, so long as they do not mislead, and the notice gives the necessary information to the proper party." *Black v. C. & N. W. R'y Co.*, 18 Wis., 208. The statute does not contemplate the sale being rendered voidable, or void, because of a failure to publish the notice the prescribed length of time. It provides that the sale shall not be avoided if it shall appear that the administrator gave notice of the time and place of sale, which was done in this case. The sale here was made by a court of competent jurisdiction, which, under our statute, is to be regarded as a court of record (R. S., ch. 117, secs. 2, 3, 6, 51; Laws of 1861, ch. 127): and such sale can no more be impeached collaterally than can the judgment of this court. It could not have been set aside even by a direct proceeding for that purpose, since there was a substantial compliance with the statute. "The purchaser at an administrator's sale of lands in probate is not bound to look behind the decree, more than to see if there was jurisdiction in the court making it, of the subject matter and of the parties in interest." After confirmation of the sale, the only remedy is by a direct proceeding to set aside the judgment. Rorer on Judicial Sales, 117; *Myers v. McDougal*, 47 Ill., 278; *Thorne v. Ingram*, 25 Ark., 52. A mere irregularity in the proceedings, or in the manner of conducting the sale, if there be no want of jurisdiction in the court, will not avoid a sale in probate, by an executor or administrator, for payment of a decedent's debts. Rorer on Judicial Sales, 122. When the sale is reported and approved by the court, it cannot be impeached collaterally for insufficiency in the notice of sale. If the probate court err in adjudicating the notice to be sufficient, the error can only be corrected on appeal, and cannot be taken advantage of collaterally in proceedings involving title under the sale. Rorer on Judicial Sales, 123; *Morrow v. Weed*, 4 Iowa., 77. Counsel also contended that the court erred in its instructions relative to mesne profits.

*Reese & Carter*, with *William E. Carter*, of counsel, for re-

McCrubb vs. Bray.

spondent, argued that the clear meaning and intent of the statute requiring notice to be posted in three public places and published for three weeks successively before the sale, is not that the notice shall be three times inserted in the newspaper, but that it shall be both published and posted for three full weeks successively next before the sale. A strict compliance with these provisions is a condition precedent to the validity of the sale. When the law says notice shall be posted and published for three weeks, it is only a shorter way of saying it shall be posted and published twenty-one days before the sale. *Olcott v. Robinson*, 20 Barb., 148 ; *Gibson v. Roll*, 30 Ill., 172 ; *Monahan v. Vandyke*, 27 id., 154 ; *Richardson v. Bates*, 23 How. Pr., 516. Counsel also contended that there was no error to defendant's injury in the instructions given on the subject of mesne profits.

LYON, J. The question first to be determined is, Did the circuit judge err in holding that the administrator's deed is void, and that the title to the land in controversy is in the plaintiff ? In *Chase v. Ross, ante*, p. 267, we held that if any of the conditions specified in sec. 62, ch. 94, R. S. (Tay. Stats., 1193, § 62), are wanting, or do not appear by direct proof or legal inference, a sale of land made by an executor, administrator or guardian under that chapter, is void. Applied to this case, one of those conditions is, that the administrator " gave notice of the time and place of sale *as in this chapter prescribed.*" Such chapter prescribes that the notice of sale shall be posted and published as therein directed, "for three weeks successively next before such sale." (Sec. 24.) In *Eaton v. Lyman* 33 Wis., 34, and in *Chase v. Ross, supra*, we had occasion to construe similar language in other statutes ; and under those decisions it must be held that the statute last above quoted requires a publication of the notice of sale for twenty-one days. In other words, three weeks must intervene between the first publication and the day of sale. In this case the notice was first published in February 27, and the sale took place March 14, or

only fifteen days thereafter. Moreover, the posting of the notices was on February 28, being only fourteen days before the sale. These circumstances invalidate the administrator's deed and defeat the plaintiff's title ; and either of them would have the same effect.

There is another condition of a valid administrator's sale entirely wanting in this case, and the want of which is equally fatal to the deed. It is that the premises must be " held by one *who purchased in good faith.*" R. S., ch. 94, sec. 62, subd. 5. It is difficult to find any element of good faith in the purchase of the premises by the defendant. Section 27 of the same chapter provides as follows : " The executor or administrator making the sale, or the guardian of any minor heir of the deceased, shall not directly or indirectly purchase, or be interested in the purchase of, any part of the real estate so sold ; and all sales made contrary to the provisions of this section shall be void." Upon the facts detailed in this record it is perfectly apparent that the defendant was interested in the sale made by him as administrator of, the land in controversy. His account had been allowed against the estate at $1,500 ; the land was bid off at precisely that sum by McDonough, and immediately conveyed by him to the defendant, who thereupon receipted to the estate for that sum. From these facts, and from all of the surrounding circumstances as they appear by the record, any intelligent court or jury would find without hesitation that the land was bid off by McDonough for the defendant. The latter is chargeable with knowledge of the law in this behalf, and, knowing that the sale was void because of his interest in the purchase, he cannot be considered a purchaser in good faith. How it would be held in case where, although the administrator was interested in the purchase, the land had subsequently been conveyed to a *bona fide* purchaser, we do not determine.

We conclude that the court ruled correctly when it held that the administrator's deed was void, and excluded the question of title from the jury.

McCrubb vs. Bray.

The only remaining question to be determined is, whether there is error in the instructions to the jury concerning mesne profits. The evidence is undisputed that the defendant held the premises, from and after 1862, adversely to the plaintiff. During that time they were not in the possession of the plaintiff or his guardian, and neither of them received or had any control over the mesne profits, as such. This is substantially admitted in the answer of the defendant, and is sufficient to entitle the plaintiff to recover for such mesne profits. It is provided by statute (R. S., ch. 141, sec. 13), that "The plaintiff in any action for the recovery of specific real property, or of the possession, shall also be entitled in the same action to recover damages for the rents and profits of the premises recovered, during the time the same are unlawfully withheld. * * * * Provided, that the plaintiff shall not be entitled to recover the rents and profits of the premises recovered, for a longer term than six years." It seems to us that had the court instructed the jury that the plaintiff was entitled, absolutely, to recover the mesne profits for the term specified in the statute, it would not be error. But the court submitted it to the jury as a question of fact to be determined by them, whether the proceeds of the land, or the mesne profits, had been received by the guardian of the plaintiff and applied to his benefit, and instructed them that if such was the case the plaintiff was not entitled to recover the mesne profits which accrued before the commencement of the action. If there was error in the instructions, it was obviously in favor of defendant, and furnishes no reason for disturbing the judgment.

We understand it to be the correct practice to assess damages for mesne profits down to the date of trial, on the same principle that interest may be recovered to that time in an action on a money demand. The profits in the one case, and the interest in the other, are but the incidents of the cause of action.

Neither do we perceive why the plaintiff may not recover damages accruing during his minority. If the guardian fails

to collect a demand or to recover property belonging to his ward, no good reason has been suggested why the ward may not recover therefor after he attains his majority.

Before leaving this branch of the case it may be observed, that if the defendant has expended money for the maintenance of the plaintiff, he may recover the same in some appropriate proceeding, but not in this action. And if the defendant is entitled to be paid for any improvements made by him on the premises in question, his remedy was under the "Betterment Act." R. S., ch. 141, secs. 30, 31 and 32, as amended by ch. 24, Laws of 1872.

Although the foregoing views are decisive of the case, yet our duty would be but poorly performed did we fail to make some comment upon the extraordinary manner in which the estate left by John McCrubb was managed and disposed of, or attempted to be disposed of, by the defendant and the county court.

The deceased left an estate appraised at nearly $4,000. It does not clearly appear that he owed a dollar at the time of his death. It is impossible to find from the evidence that he owed over ninety dollars. The expenses of his funeral and cost of a tombstone were one hundred dollars. There was ample personal property belonging to the estate, excluding that selected by the widow under the statute, to have paid all such debts and expenses, and the cost of administration. The estate should have been administered in a few months at small expense, and the land should have been left intact for the heirs. But the county court permitted the administration to linger along for more than five years, and then, without adequate proof (so far as the record shows), and upon a most vague and insufficient statement of the administrator, allowed an account in his favor against the estate of $1,500, and permitted three-fifths, in quantity, of the real estate to be sold to pay it! It is a fair inference from the testimony, that the most valuable portion of the

land was thus sold; and it was sold for $350 less than the appraisal thereof made five years before.

Several hundred dollars were allowed the defendant as administrator for permanent improvements made by him upon the very land thus sold to pay for such improvements. Besides, the court made an enormous, and of course an illegal, allowance for the services of the administrator; but the precise amount thereof does not clearly appear. It must have been more than five hundred dollars. Moreover, on the 6th of January, 1862, the court allowed the final account of the defendant, in which it is stated that the stock owned by the intestate when he died, was then on the farm unsold, and was in a better condition than when the administrator took possession of it. The appraised value of such stock was $342. Yet on March 31st, following, the county judge approved an inventory of the estate of the plaintiff and his sister and coheir, filed by Mrs. Bray, who had been appointed their guardian, in which inventory no personal property is mentioned.

The administrator should not have been allowed to make any improvements beyond repairs absolutely necessary for the preservation of the estate; he should have been compelled to administer the estate promptly and economically; and the real estate should have been preserved intact until it became necessary to sell some portion of it to defray the necessary expenses of the maintenance and education of the infant heirs. But none of these requirements were enforced. Indeed, the whole proceedings seem to be characterized by an utter disregard of the interests of the heirs (who were mere infants), which it is painful to contemplate, and which deserves the severest censure. So flagrant a case of judicial spoliation of the patrimony of infants has seldom, if ever, come to our knowledge, and we hope never to hear of another like it.

*By the Court.*—The judgment of the circuit court is affirmed.