BECKER and wife, Respondents, vs. HIGHWAY TRAILER COMPANY, Appellant.

*April 10—May 5, 1942.*

*Stanley W. Slagg* of Edgerton, for the appellant.
*John T. Roethe* of Janesville, for the respondent.

FRITZ, J.   The principal matter in controversy is the location of the true west boundary line of plaintiffs' property,

under their chain of title, between two adjacent tracts of land, the title to one of which is in plaintiffs, and to the other of which is in defendant; and whether an old fence, located approximately where there is a steel wire fence at present was on that boundary line. In a special verdict the jury found that the old fence was not the true west boundary line of plaintiffs' land; and that the south end thereof was seventy-two and five-tenths feet west of the present fence, as shown by a survey made by B. J. Sunny. In relation to these findings defendant contends that they are not supported by the evidence; and that a survey made by A. W. Ely establishes that Sunny's survey is so incomplete that it did not present a jury question and there was no other substantial evidence opposed to defendant's evidence.

For the consideration of these contentions it suffices to note the following. Plaintiffs have title to about two acres of land fronting, on the south, on Newville road in the city of Edgerton, and described as the south one half of lot 1 of Matthew Croft's Third Addition to the city. When B. J. Sunny, as the acting city engineer, was making a survey in 1936 for a sewer and water main on Newville road, he noticed that the frontage on the south side of lot 1 was shorter than was given on the original plat on record in the register of deeds' office; and he claims the south side as shown on that plat measures three hundred sixteen and eight-tenths feet. According to this measurement the south end of the west boundary of lot 1 would be seventy-two and five-tenths feet west of the present steel fence. The land constituting lot 1 was acquired by Matthew Croft in 1881 by a deed which described the land as bounded "on the west by lands formerly owned by Thomas Brown and S. S. Davis and afterwards by R. T. Lawton;" and that boundary, which would be the east boundary of the land formerly owned by said Brown and Davis and afterwards by Lawton is described in a warranty deed, dated July 2, 1858, and recorded July 6, 1858, by which

Thomas Brown conveyed the land to R. T. Lawton, as "Thence along the edge of said pond at high-water mark to the milldam." This is apparently the only recorded description designating the location of the west boundary of the land deeded to Croft in 1881, and consequently that boundary must be deemed, in the absence of proof to the contrary, to have been the line "along the edge of said pond at high-water mark to the milldam." In the course of the subsequent years there have been such changes in the surface of the land, by reason of the uses made thereof and otherwise, that it has become difficult to definitely ascertain the exact location of that boundary line "along the edge of said pond at high-water mark," but there is credible evidence that for many years prior to and at the time of the conveyance in 1917 to defendant of the land bounded on the east by the west boundary line of lot 1 of Matthew Croft's Third Addition, a fence located on the line of the present steel fence was on a ridge, and the land to the west looked like the bottom of an old pond; that the steel fence is on a bank, which is four to six feet high in places and appears to be the line of the high-water mark of an old millpond that was west of the west boundary, as described in the deed by which Croft acquired title in 1881; that on the land immediately to the west of this boundary there was a factory building which was seventeen and two-tenths feet from the old fence at the south end and extended northward parallel thereto and was built there by the Edgerton Wagon Company, which had title to that land from 1910 until 1915 when it conveyed the land to L. H. Towne, who in turn conveyed it to defendant in May, 1917; and that upon thus acquiring title thereto defendant used the factory building until it erected a building in place thereof in 1919, and upon its destruction by fire in 1921 erected another building in 1939, located likewise seventeen and two-tenths feet from the present steel fence.

After B. J. Sunny noticed in 1936 that there was only two hundred forty-four and three-tenths feet frontage on Newville

road along the south side of lot 1 from the east boundary to the steel fence, and also found that the recorded plat of Croft's Third Addition calls for an area of four and sixteen one-hundredths acres for lot 1, and in order to have this area it is necessary to establish the southwest corner thereof seventy-two and five-tenths feet west of the fence line, he concluded that the corner should be seventy-two and five-tenths feet west of the fence line, and that there should be included as part of the land owned by plaintiffs a triangular shaped parcel containing thirty-five one-hundredths of an acre adjacent to the fence and seventy-two and five-tenths feet wide at the south end, and fourteen feet wide along an extension, westward beyond the fence, of the north line of the south one half of lot 1. Sunny testified that, in making his survey, which resulted in the conclusions stated above, he started at the quarter corner, at the northeast corner of lot 3 in Croft's Third Addition, and ran southerly on what Sunny called the quarter section line along the east boundary of lots 3 and 11 to Newville road, and thence westerly three hundred sixteen and eighttenths feet along this road to what he called the southwest corner of lot 1, which, as located by him, would be seventy-two and five-tenths feet west of the present steel fence and inside defendant's factory building a distance of fifty-five and threetenths feet west of the east wall. He also testified he traversed the present fence in accordance with the measurements given on the plat, but did not run lines from the southwest corner as located by him through the plat, and never ran the line, which he called the west line of plaintiffs' land, up to the north line thereof, nor did he run the west line of Croft's Third Addition up to the quarter section line, which was the north boundary thereof. In making a report of his survey to plaintiffs and a plat based thereon (a blueprint of which plaintiffs introduced in evidence as Exhibit A), he merely completed the west and north sides of the triangular parcel, which is in dispute, by filling in the angles and measurements shown on the recorded plat of Croft's Third Addition. Neither did he check his sur-

496

vey by starting at the north quarter corner at the northeast corner of lot 3 and going across along the north line of the Addition to the northwest corner, and then south along the west side of the plat to Newville road; nor by starting at the northeast corner of lot 3 and running south along the east line thereof to the center line of East Fulton street, thence westerly along this line to the west side of the plat, and thence southerly along this side of lot 1 to Newville road. He testified that he was not interested in continuing from what he claimed was the southwest corner of lot 1 by running the west line of lot 1 northerly, according to the angles shown on the plat, to see if it would come out correctly on the north side; that he never ran the lines along the west side or along the north side of the plat to see if he could make the plat close; that he never could close the plat by running those lines along the distances and at the angles which he used; and that this might be called an error in the plat.

On the other hand, Alex W. Ely, the city engineer of Edgerton for twenty years, testified that in making a survey for defendant and following the dimensions and bearings on the recorded Croft plat of the lines from the northeast corner of the Addition along the east and south boundaries, he found that the southwest corner of lot 1 would be about seventy-two and five-tenths feet west of the steel fence, as Sunny testified. However, when he tried to locate that corner by proceeding from the northeast corner of the Addition, according to the dimensions and bearings on the plat and the surveyor's certificate, which is part thereof, first to the west and then south, or partly to the south and then west and south, he found that the boundary lines would not close at the point seventy-two and five-tenths feet west of the steel fence as the southeast corner of the plat; but that he also found, by making allowances for variations due to inaccuracies in the type of compasses formerly used, and the stretching of the old measuring tape formerly used, and by also allowing for a difference in

respect to a bearing on the west side of the plat, which reads south 3 degrees, 10 minutes west, as shown on the plat, but reads in the surveyor's certificate south 30 degrees, 30 minutes west, Ely ended up with a line which is closer to the steel fence line, and which he marked "F" on a drawing made by him of Croft's Third Addition and the adjacent part of defendant's premises.

Upon a review of the evidence in relation to the above and other material matters, it is evident that the survey made by Sunny was so incomplete,—when considered in connection with the facts disclosed upon the survey made by Ely, and Sunny's admission that he never could close the plat by running the lines along the distances and at the angles which he used,— that the jury's findings that the south end of the true west boundary line in question was seventy-two and five-tenths feet west of the steel fence, and that the old fence was not the true west boundary line, are against the clear preponderance of the evidence. However, our conclusion in this respect does not warrant the substitution of findings by this court to the contrary, in view of the established rule that if there is any credible evidence, which under any reasonable view admits of inferences supporting the jury's findings, then the court cannot substitute therefor its findings to the contrary. *Millard v. North River Ins. Co.* 201 Wis. 69, 228 N. W. 746; *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741; *Rupert v. Chicago, M., St. P. & P. R. Co.* 202 Wis. 563, 232 N. W. 550; *Duss v. Friess,* 225 Wis. 406, 273 N. W. 547.

Defendant further contends, however, that in respect to the issues so determined by the special verdict, it was highly prejudiced by the admission in evidence of Exhibit A (the blueprint of the plat made by Sunny as to the results of his survey) by reason of the legend "Part of lot one encroached upon by Highway Trailer Co.," which he placed on the plat. From that legend he drew an arrow pointing to lines purporting to inclose the triangular parcel in dispute, and which is thus designated

by the legend affirmatively and positively as "Part of lot one," etc. Similar in form and effect is the designation of a line, purporting to bound the parcel, as the "West line of lot no. 1" by means of another arrow pointing from these words to that line. The court, instead of sustaining defendant's objection to the plat because of the legend thereon, ruled that the words therein, "encroached upon by," should read, "now occupied by;" and then, with the exception of directing that the legend is to be considered changed in this respect, the court admitted Exhibit A in evidence over defendant's objection. The change so directed did not avoid or remedy the prejudicial effect of permitting the affirmative and positive statement "Part of lot one now occupied by the Highway Trailer Co." to remain on the exhibit and be received in evidence as part thereof without any instruction limiting the permissible purpose for which the legend could be admitted and taken into consideration by the jury. The mere substitution by the court of the words "now occupied by" for "encroached upon by," without eliminating from the legend also the words "Part of lot one" with the arrow pointing to the lines inclosing the triangular parcel in dispute, left the effect and consequences thereof fully as prejudicial to defendant's contention in respect to that parcel; and such effect and consequences were apt to follow particularly in view of the following terms in the title at the top of Sunny's plat, to wit: "Plat of survey: Of all that part of lot one of Croft's Third Addition, . . . according to the recorded plat thereof. . . . " These terms, in connection with the proof that he was the official county surveyor, admitted of the impression and inference that the plat was an official document, and what was shown thereon was according to the recorded plat. As there was nothing to indicate that the statement in Sunny's legends and title were but his assumption or opinion and not part of the original recorded plat, and that they were not to be so considered by the jury, the admission in evidence of the exhibit, without properly limiting the per-

missible purpose and effect thereof, constituted prejudicial error; and by reason thereof the defendant is entitled to a new trial.

In view of that conclusion, there is no occasion to discuss defendant's assignment of error in relation to the denial of its motion after verdict for a finding by the court that defendant's predecessors in title held possession of the premises in dispute adversely to plaintiffs and their predecessors in title for twenty years or more prior to August 17, 1939. It suffices to note that there was no error in this respect because no request had been made for the submittal of a question to the jury on that issue, and there are such conflicts in the evidence in relation to the issue as to adverse possession that it does not admit holding, as a matter of law, that there was such adverse possession. Consequently, defendant was not entitled to have the court find these issues in favor of defendant. If on a retrial there are again issues under the evidence in these respects, they can all be submitted to the jury for determination.

Defendant also contends that the court erred in not limiting the rental value recoverable by plaintiffs, in the event of unlawful occupation and possession by defendant of the premises in dispute, to the period from February 20, 1939, when plaintiffs purchased the premises under a written contract, to May 5, 1941, the last day of the trial. In this respect it suffices to note that past-due rents are personal property (50 C. J. p. 762, § 36 E), and constitute mere choses in action which are not a part of the land and do not pass as incident to a transfer of the reversion (32 Am. Jur. p. 360, § 442; 7 Ballard, Law of Real Property, p. 673, sec. 716; *Shell Petroleum Corp. v. Jackson* (6th Cir.), 77 Fed. (2d) 340, 341); and that damages for such rent cannot be assessed beyond the date of trial (*McCrubb v. Bray,* 36 Wis. 333, 341).

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.