GALVIN and another, Respondents, vs. LOVELL, Appellant.

*April 4—May 2, 1950.*

*William M. Hayes* of Baraboo, for the appellant.

For the respondents there was a brief by *Curran, Curran & Curran* of Mauston, and oral argument by *Charles P. Curran*.

FRITZ, C. J.    All of the store premises involved in this action were owned by Kurt and Augusta Gebhardt, and they leased the store to Larcena L. Galvin on July 19, 1946.  She

with two copartners conducted a grocery business in part of the store under the name of "Mauston Food Market." Evidence introduced on the trial of the action fairly admitted of the court's findings (so far as material here) to the following effect:

That plaintiffs were at all times involved herein in possession of the store under the lease executed by Kurt and Augusta Gebhardt. That on October 2, 1947, plaintiffs entered into a lease with defendant whereby he agreed to rent for one year the meat-department portion of the store at a rental of $275 per month, with an option to renew said lease at the expiration of said term for thirty-two months from November 1, 1948, to July 1, 1951, at the same rental and conditions. That pursuant to said lease, defendant entered into possession of the meat department in October, 1947, and continued in possession and operated said department under the lease until the latter part of May, 1948. That plaintiffs substantially complied with all the terms of the lease, and any breach of the terms on their part was unimportant and waived by defendant. That the lease, under which plaintiffs held possession of the premises from Kurt and Augusta Gebhardt, provided that without their written consent the premises could not be sublet; and that no such consent in writing was obtained by plaintiffs; but that Kurt Gebhardt had full knowledge of the agreement and lease to defendant and consented to the same, and assisted defendant while he was in possession of the meat department, and accepted the rent from the plaintiffs and waived any claim that Gebhardt may have had at the commencement of the occupancy of the premises by defendant to object to such occupancy, and at no time, prior to or after defendant's termination of the lease, objected to plaintiffs concerning their agreement and lease with defendant. That without any cause or justification defendant, by a written notice to plaintiffs on May 13, 1948, terminated his lease and subsequently vacated the premises in the latter part of May, 1948. That defendant paid all rental due the plaintiffs under the lease through the month of May, 1948, but paid no rental thereafter. That after June 1, 1948, plaintiffs took possession of the portion of the premises leased to defendant, and attempted to rent the premises to other per-

sons during the balance of the term of the agreement but were unable to do so. That plaintiffs sustained damages by reason of the breach of the lease by defendant in that they lost the rental for the period from June 1, 1948, to October 1, 1948, and that the damage sustained by plaintiffs by reason of loss of rent is the sum of $1,375. That defendant's claim of fraud and false representations has not been sustained, and there is no competent evidence of any fraud or misrepresentation on the part of the plaintiffs; and that there is no evidence to sustain the defendant's counterclaim, and no evidence of any damages suffered by defendant by reason of any breach or improper act of the plaintiffs.

Upon those facts the court concluded that plaintiffs substantially complied with all terms of the lease between them and defendant; that he breached the terms of said lease; that there is no privity of contract between defendant and Kurt and Augusta Gebhardt, and they waived the provisions as to subletting set forth in the lease between them and the plaintiffs; that defendant's counterclaim be dismissed; and that plaintiffs have judgment on their complaint for $1,375.

Defendant contends that plaintiffs did not have a cause of action against him when they commenced this action on May 26, 1948. As defendant claims, prior to that date he had paid all rent due to June 1, 1948, under the lease, and there was no loss of rent until that date and thereafter. However, there was a termination of the lease on May 13, 1948, by defendant's written notice to plaintiffs which reads:

"I hereby give each of you notice that I consider that you have broken the lease under which I have been operating, that I consider myself released from said lease on account of your having sold equipment that was included in said lease—that I will vacate said premises covered by said lease as soon as it is physically possible, that I am herewith tendering compensation for occupancy of said premises to cover the period of time which will be necessary for me to vacate said premises."

When defendant delivered that notice to plaintiffs on May 13, 1948, informing them that he considered himself

released from the lease, and that he would vacate the premises as soon as possible, he thereby committed an anticipatory breach of the lease (unless he had become released therefrom as stated in his notice), and therefore plaintiffs had an immediate right of action for damages against defendant for such anticipatory breach of the lease which was for the period from November 1, 1947, to November 1, 1948. As stated in 51 C. J. S., Landlord and Tenant, p. 883, sec. 250,—

"If the lessee renounces or repudiates the lease, or a material part thereof, and disables himself from performing his covenants or conditions, before the time fixed for such performance, or, in other words, if he commits an anticipatory breach, the lessor, by the weight of authority, may regard the lease as terminated as far as further performance is concerned, and may maintain an action at once for the damages occasioned by the breach, . . ."

In *Amberg Granite Co. v. Marinette County,* 247 Wis. 36, 42, 18 N. W. (2d) 496, we stated:

"Although it has been held that the right to rescind for an anticipatory breach is exceptional and can be permitted only where future breach is conclusively established, *Smoot's Case* (1872), 15 Wall. (U. S.) 36, 21 L. Ed. 107; *Dingley v. Oler* (1886), 117 U. S. 490, 6 Sup. Ct. 850, 29 L. Ed. 984, nevertheless where a party disables himself from performing the other party may treat the contract as rescinded and sue at once." *Pierson v. Dorff,* 198 Wis. 43, 51, 223 N. W. 579; *Washburn-Crosby Co. v. Kubiak,* 175 Wis. 291, 185 N. W. 162; Restatement, 1 Contracts, p. 475, sec. 318.

In an action for damages for an anticipatory breach of contract, the plaintiffs are entitled to recover all damages, not only up to the time of the commencement of the suit, but also damages occurring during the pendency thereof and down to the date of trial. *Becker v. Highway Trailer Co.* 240 Wis. 490, 3 N. W. (2d) 725; *McCrubb v. Bray,* 36 Wis. 333; 25 C. J. S., Damages, p. 908, sec. 193.

The sole reason stated in defendant's notice of May 13, 1948, because of which he considered himself released from

his lease was "on account of" plaintiffs "having sold equipment that was included in said lease." On the trial the only proof of a sale of any of the leased equipment was that plaintiffs sold a small meat grinder which defendant never used, but had wrapped and placed in a storage room of the store because he preferred to use two larger meat grinders, one of which was part of the leased equipment, and the other was owned by him. Although he knew of plaintiffs' sale of the small grinder for $45 in the early part of 1948, he did not object, and never asked to have it replaced. Under these circumstances the sale thereof was evidently so inconsequential that it did not constitute sufficient basis for defendant to consider himself released from the lease.

Although no other ground for terminating the lease was stated in defendant's notice of May 13, 1948, he alleged in his answer and counterclaim that plaintiffs had failed to obtain the consent of Kurt and Augusta Gebhardt to the subletting of the meat department to defendant. On the trial the lease between the Gebhardts and plaintiffs was not offered or received in evidence, and there is no proof in the record that plaintiffs were occupying the premises in 1947 and 1948 under a lease entered into in 1946 between the Gebhardts and the plaintiff Larcena L. Galvin. Mrs. Gebhardt was not called as a witness. But it appears from the testimony of her husband that he had knowledge of the arrangement between plaintiffs and defendant prior to and during defendant's occupancy of the premises, and had personally assisted in making necessary alterations so that defendant could occupy the premises and had assisted defendant in butchering and other duties after defendant entered into possession of the meat department; and that with full knowledge of the facts Gebhardt accepted the rent from plaintiffs at all times and at no time voiced any disapproval or objection either to plaintiffs or defendant of his occupancy of the meat department. Under those circumstances there were applicable

the conclusions stated in *Katz v. Miller,* 148 Wis. 63, 70, 133 N. W. 1091,—

"The lease, as stated, contained a covenant against assignment thereof without the written consent of the lessors. The court found that no such consent was obtained when it was assigned to the plaintiff, but held that this breach was waived by the lessors by Bigelow's reception of the rent with full knowledge of such assignment. The facts are without dispute that he knew of and orally assented to the assignment and for one year accepted and collected the rent accruing thereon from the plaintiff. Under the circumstances the acceptance of the rents was a waiver by the lessors of the breach of the covenant against assignment. *Gomber v. Hackett,* 6 Wis. 323; *Jolly v. Single,* 16 Wis. *280; *Palmer v. City L. Co.* 98 Wis. 33, 73 N. W. 559; *O'Keefe v. Kennedy,* 3 Cush. (57 Mass.) 325."

Although likewise not stated in his notice terminating the lease, defendant, in denying in his answer that plaintiffs performed the terms and conditions of the lease, alleged that they had "for a considerable length of time prior to May 13, 1948, . . . handled and sold at retail" in their grocery department, "canned meats and lard, all in violation of and contrary to said agreement." To prove such violations defendant relied upon testimony that plaintiffs sold in their grocery department some canned fish, and canned meat and baby food, and also some Crisco and Spry, and that the latter are grocery items, but are not lard of any kind; and that defendant did not buy any of this shortening in bulk or quantity lots. But there was evidence, which the court could consider credible, that plaintiffs bought the canned Prem and baby food through defendant from his supplier, and defendant testified they came in on his orders; that the sales thereof, and of bulk shortening for a short time, were a technical violation of the lease, but he never made any specific objection thereto. Consequently, to violations in such minor respects, including also the sale of the meat grinder,—

all of which were unimportant and mere technical failures in performance,—there is applicable the rule stated in *Gedanke v. Wisconsin Evaporated Milk Co.* 215 Wis. 370, 375, 254 N. W. 660,—

"As a general rule, rescission of a contract is not permitted for a casual, technical, or unimportant breach or failure of performance, but only for a breach so substantial as to tend to defeat the very object of the contract. 1 Black, Rescission and Cancellation (2d ed.), p. 550, sec. 197; *Selby v. Hutchinson,* 4 Gilm. (9 Ill.) 319." *Illges v. Congdon,* 248 Wis. 85, 20 N. W. (2d) 722, 21 N. W. (2d) 647.

Defendant contends that the court erred in finding that by his breach of the lease plaintiffs sustained the loss of $1,375 as the monthly rental of $275 from June 1, 1948, to October 1, 1948; and in entering judgment for plaintiffs' recovery of $1,375 from defendant. Defendant claims that plaintiffs took over the meat department after defendant removed the last of his equipment by June, 1948; and that thereby they accepted a surrender of the premises and are therefore deprived of the right to recover damages. The plaintiff Galvin testified that,—

After the defendant left we attempted to secure someone else to run the meat department but were unsuccessful in securing anyone else. We started operating the meat department around the middle of June, 1948. We did not operate it quite as hard as he had operated it. We had to take over. From that time on plaintiffs operated the meat department. The Food Market suffered damages as a result of defendant terminating the lease for the operation of the meat department. The loss for the months June, July, August, September, and October, 1948, as compared with those months in 1947 was $713.71, but that sum was in both the grocery and meat departments. Defendant's moving out was not the only thing that affected the question of how much profit or loss there might be in 1948 as against 1947, but it definitely had an effect on plaintiffs' grocery department.

The court found that after June 1, 1948, plaintiffs took possession of the portion of the premises leased to defendant, and attempted to rent the premises to other persons during the balance of the term of the lease, but were unable to do so. There is evidence which the court could consider credible to sustain that finding. But defendant contends that plaintiffs are not entitled to recover as damages the rentals for the unexpired term of the lease. The meat-department premises leased to defendant were in a portion of the store and in the other portion plaintiffs operated their grocery department. Upon defendant's breach of the lease, it became plaintiffs' duty as the landlords to take possession of the premises abandoned by the defendant and use reasonable diligence and all reasonable effort to relet the premises in order to reduce the damages resulting from the tenant's breach of the lease. As stated in *Lincoln Fireproof Warehouse Co. v. Greusel,* 199 Wis. 428, 438, 224 N. W. 98, 227 N. W. 6,—

"The rule that the landlord owes the duty to mitigate damages is not a new or novel proposition of law. This rule has long been applied to other contracts and no reason appears why it should not be applied to the particular form of contract that is included in leases of real estate, as it was applied in *Poposkey v. Munkwitz,* 68 Wis. 322, 331, 32 N. W. 35, where, in determining the measure of the damages sustained because of a breach of a lease, this court said: 'Another rule having its foundation in natural justice should here be stated. In any case of a breach of contract the party injured should use reasonable diligence and make all reasonable effort to reduce to a minimum the damages resulting from such breach.' "

As we stated in *Weinsklar Realty Co. v. Dooley,* 200 Wis. 412, 415, 228 N. W. 515,—

". . . where a tenant vacates or abandons the leased premises before the end of the term, the landlord has a

right to elect to accept the surrender and terminate the lease or to enter and take possession for the purpose of mitigating the damages for which the tenant is liable because of his breach of the lease. The election to enter for the purpose of mitigating damages may be evidenced by formal notice or by other proper means constituting such unequivocal act as would amount to an election of remedies in a proper case.

"The mere entry and taking possession of the premises for the purpose of leasing the same does not constitute such an election, because it is an equivocal act,—something to be done by the landlord regardless of whether his purpose be to terminate the lease or merely to perform his legal duty to mitigate damages.

"The right to elect which course he will pursue remains with the landlord until he makes his election by taking some step which clearly evidences an intent to make a choice between the two inconsistent remedies that are open to him. *Such a choice was made in this case when the plaintiff began this action. That act clearly evidenced an election on the part of the landlord to hold the tenant liable on the covenants of the lease and established the fact that the landlord took possession for the purpose of reletting the premises in order to mitigate the damages which he sustained through the tenants' breach of the lease.*"

Plaintiffs, if they had so desired, could have held the meat-department premises in a "for rent" status, and under such circumstances, if they could not get a tenant, the defendant would have been liable for the loss of rentals suffered by the plaintiffs during the balance of the defendant's lease term. Consequently, as after the defendant's termination of the lease by his notice of May 13, 1948, plaintiffs on May 26, 1948, commenced their action against defendant because of his anticipatory breach, and thereby evidenced their election to hold him liable for damages under the covenants of the lease, the fact that plaintiffs, after June 1, 1948, took possession of the premises abandoned by defendant and attempted to rent them to some other party did not impair their right to recover $275 as damages for their loss of rent for June, 1948,

while attempting to secure another tenant. However, when, after they were unsuccessful in that respect up to the middle of June, 1948, they prepared to operate the meat department and use the premises intended for that purpose, their possession thereof resulted in the termination of defendant's liability for any further rental after the month of June. *Richter v. Fassett*, 253 Wis. 101, 33 N. W. (2d) 230.

Plaintiffs' claims that they are entitled to recover also damages for the expense of alterations required by defendant, and for their loss of income in the operation of the grocery department as the result of defendant's breach of the lease cannot be sustained. Likewise, defendant is not entitled to recover damages on claims asserted in his counterclaim. It follows that the judgment must be modified by reducing the amount recoverable as plaintiffs' damages to $275; and as so modified the judgment must be affirmed.

*By the Court.*—Judgment modified as directed in the opinion, and affirmed as modified.