PATTON, Appellant, vs. MILWAUKEE COMMERCIAL BANK and others, Respondents.

*June 2—June 22, 1936.*

For the appellant there was a brief by *Kaumheimer & Kaumheimer,* attorneys, and *Leon E. Kaumheimer, Gifford Alt,* and *George H. Likert, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Likert* and *Mr. Leon E. Kaumheimer.*

For the respondents there was a brief by *Affeldt & Lichtsinn* of Milwaukee, and oral argument by *George A. Affeldt.*

WICKHEM, J.  This case presents no disputed questions of fact.  On October 10, 1924, plaintiff executed a lease to the bank demising a portion of the premises known as the Patton Building in the city of Milwaukee for use as banking offices.  For the first floor and basement the term provided for was twenty-four years and ten months, commencing on the 1st day of May, 1925, and ending on the 28th day of February 1950.  For the second floor the term was twenty years from the 1st of March, 1930, ending February 28, 1950.  The lease as originally executed reserved a rent of $15,000 per year for the first four years and ten months of the term, and, in addition thereto, forty-eight per cent of the amount of increase in taxes for each year; for the next ten-year period, the sum of $18,000 per year; and for the next ten-year term the sum of $20,000 per year.  These rentals all applied to the first floor and basement of the premises. A separate provision for rentals as to the second floor of the premises has no materiality in this action.  The lease was amended by agreements dated April 14, 1930, April 2, 1931, February 29, 1932, and January 18, 1933.  The last agree-

ment provided for a rental of $18,000 per year from the 1st day of January, 1933, to the last day of December, 1935. The rental for each successive five-year period of the lease was to be agreed upon by the parties or by arbitration. As a part of this agreement the bank surrendered the second floor of the leased premises. The lease provided, among other things, that in case of default by the lessee—

"lessor at his own option, immediately or at any time afterwards and without notice, may elect and deem said entire rent, less sums already paid thereon, to be due and payable, and thereupon the same, with all moneys owing said lessor for work, materials and services mentioned herein or furnished said lessee, shall become and be due and be .payable forthwith as if originally made payable at that time. . . ."

On May 25, 1933, the then commissioner of banking took possession of the property and business of the bank as a delinquent bank in accordance with the provisions of ch. 220, Stats. The bank was at that time and has since been insolvent. The commissioner remained in possession until the creation by statute of the commission and the appointment and qualification of the members thereof. Thereupon, the commission succeeded the commissioner of banking in the possession of the bank and its assets and has since been engaged in the liquidation of the bank. On or before the 17th of August, 1933, the commission gave notice to plaintiff of its intention to vacate the premises. Up to the time of this notice there had been no default either on the part of the lessee or the commission with respect to any of the covenants of the lease. On the 19th day of August, 1933, plaintiff duly presented his claim for—

"Rent due under said lease—September 1, 1933, through December 31, 1935, at $18,000 per year—$42,000."

The commission sent notice to appellant rejecting this claim. On September 11, 1933, the commission abandoned possession of the premises except a portion of the basement

covered by an agreement entered into between the commission and plaintiff on August 17, 1933. By the terms of this agreement plaintiff leased to the banking commission a portion of the basement for $75 per month, from month to month, without prejudice to any claims of the plaintiff against the Milwaukee Commercial Bank or the commission arising out of the original lease. Plaintiff agreed to apply this rent upon any claim that he might have, and it was further agreed that plaintiff should have the right to lease the first floor of the building, and that the commission was to have the right to credit in diminution of his claim any sum received as rent.

The foregoing statement of facts is sufficient for the purpose of dealing with plaintiff's principal claim. The facts concerning the second claim will be stated in connection with the contentions applicable thereto.

The claim filed by plaintiff was for the rent to accrue under the lease during that portion of the term commencing September 1, 1933, and ending December 31, 1935. Plaintiff's reason for selecting this period is obvious. Under the lease as modified on January 18, 1933, the rental for each five-year period subsequent to 1935 was to be established by agreement, and thus at the time of filing the claim the amount of the rent for this period was wholly dependent upon future negotiations. Whether plaintiff's claim be regarded as one for rent or one for damages arising out of the abandonment of the lease it was properly rejected. Treated as a claim for future rent, no debt would arise unless and until the instalments became due. The first difficulty of treating it as a claim for damages for abandonment of the premises by the bank is that it purports to be a claim for rent and not for damages, and that no effort was made to prove actual damages. Aside from this, the claim had no existence when possession was taken by the commissioner and, leaving

aside for the moment the acceleration clause, the damages are wholly contingent, conjectural, and speculative. At the time of the taking possession by the commissioner of banking there had been no default by the bank. Since the commission paid the rent up to the time of its repudiation of the lease, and since plaintiff immediately filed its claim, the claim must wholly rest upon the damages sustained through the repudiation. At the time the claim was filed it was entirely possible that the building might be rerented without loss to plaintiff. It would be the obligation of plaintiff to use reasonable diligence to this end. *Selts Inv. Co. v. Promoters of F. N. of W.* 197 Wis. 476, 220 N. W. 222, 222 N. W. 812. The building might be destroyed, terminating lessee's obligation to pay rent. Since the amount of rent had been agreed upon only up to 1935, the amount of rent which would have been due for the balance of the term was uncertain and depended upon contingencies that never happened. It is not at all clear that upon abandonment by the bank before going into receivership a court of law could have liquidated the damages. Practical considerations make it impossible to recognize this as a claim against the assets in the hands of the commission. This conclusion is in line with the overwhelming weight of authority. *Towle v. Commissioner of Banks,* 246 Mass. 161, 140 N. E. 747; *Kottler v. New York Bargain House, Inc.,* 242 N. Y. 28, 150 N. E. 591; *Pacific States Corp. v. Rosenshine,* 113 Cal. App. 266, 298 Pac. 155; *Varick Spring Corp. v. Bank of United States,* 149 Misc. 908, 268 N. Y. Supp. 272, affirmed 264 N. Y. 297, 190 N. E. 647.

The foregoing discussion has taken no account of the acceleration clause in the lease which constitutes plaintiff's principal reliance. As heretofore stated, this provides that upon breach of covenant by the lessee, the amount of rent for the whole term becomes immediately due and payable. De-

fendant contends that this clause is invalid under the provisions of sec. 221.14, Stats. 1931, which reads as follows:

*"Real estate, for what purposes held.* A bank may purchase, hold and convey real estate for the following purposes only: . . . No bank shall invest in a banking office, including apartments connected therewith, together with furniture and fixtures, or become liable thereon in a sum exceeding fifty per cent of its capital and surplus. . . ."

We think it is unnecessary to consider whether such a clause constitutes an investment in violation of this section. It is at all events plain that it is a penalty and not a provision for liquidated damages. It is as applicable to a breach of the least important covenant of the lease as it is to its complete abandonment or repudiation, and even with respect to the latter, it must be considered to be grossly in excess of the damages reasonably to be anticipated as a result of the breach. For this reason it cannot be considered to constitute a *bona fide* effort to liquidate damages. It follows that it must be held to be a penalty, and, as such, it is not enforceable, nor is it effective to make certain what otherwise plainly constitute speculative elements of damage. *Kothe v. R. C. Taylor Trust,* 280 U. S. 224, 50 Sup. Ct. 142.

Plaintiff's second claim was for $2,005.90, the proceeds of certain insurance policies. The facts respecting this claim were as follows: The bank installed new flooring and did certain plastering and painting on the premises demised to it and effected fire insurance at its own cost and in its own name covering such property. On July 4, 1932, fire occurred damaging such flooring, plastering, and painting. This loss was adjusted by the insurance companies at $2,881.38. This sum was allocated as follows by the adjusters: $1,100 for repair of the floors; $166 for plastering; $785.50 for painting and bronzing. Plaintiff made no claim to $875.48 of this sum. There was testimony that the basement floor was damaged by water and had never been repaired by the bank, and

also that the plastering damaged by the fire and certain painting on the building proper was never repaired. The claim was based upon provisions of the lease providing, (1) that alterations, additions, improvements, etc., except movable office furniture and store fixtures, become the property of the lessor and remain on the property at the termination of the lease; (2) that the lessee on the termination of the lease shall return the premises to the lessor "in as good condition and repair as when received, excepting ordinary and reasonable wear and damage by accident, including fire, which shall have happened without fault or neglect of said lessee, its agents and servants."

The claim is that the bank kept the proceeds of the insurance policies and failed to repair the damage caused by the fire. As a consequence of this, plaintiff claims to be entitled to the proceeds of the insurance policies. The bank was not required to carry insurance and was not liable for any damages to the premises by fire happening without its fault or neglect. We fail to see what possible interest the plaintiff can have in the proceeds of these policies. The bank had an insurable interest and insured this interest. The money paid was paid as a result of a contract between the bank and the insurance companies. The bank owed no duty to the plaintiff to restore the premises, and plaintiff has no interest in the proceeds of the policies.

*By the Court.*—Judgment affirmed.