FIRST WISCONSIN TRUST COMPANY, and others, Plaintiffs-Respondents and Cross-Appellants, v. L. WIEMANN COMPANY, Defendant-Appellant and Cross-Respondent.†

Supreme Court

*No. 77–089. Submitted on briefs December 5, 1979.—Decided January 8, 1980.*
(Also reported in 286 N.W.2d 360.)

---

† Motion for reconsideration denied, without costs, on February 13, 1980.

For the appellant the cause was submitted on the briefs of *Morris Karon* of Milwaukee.

For the respondents the cause was submitted on the briefs of *Herbert L. Usow, S.C.*, of Milwaukee.

CONNOR T. HANSEN, J.   The defendant entered into a 28 year lease for the ground floor of a building in Milwaukee in which to operate a retail variety store. The term of the lease was from June 1, 1953, to May 31, 1981.   The rent was $1,000 per month, plus a percentage of the net sales in excess of $200,000 per year, and $166.66 per month to repay a $25,000 loan from the lessor for the financing of improvements.   The defendant also agreed to pay one-half of the real estate taxes in excess of $4,000 per year.

Subsequent to the time the lease was entered into, the plaintiffs purchased the property from the former owners for $257,500 and expended $60,000 for improvements, making a total investment of $317,500.

On October 4, 1972, the plaintiff lessors commenced an action against the defendant lessee alleging that the defendant had failed to pay rent for the month of October, 1972, and demanding the sum of $1,166.67 as damages. The defendant answered and alleged as an affirmative defense that the plaintiffs breached the covenant of quiet enjoyment and the covenant to repair contained in the

lease, and that the action of the plaintiffs constituted constructive eviction. The defendant also alleged that prior to September 28, 1972, the defendant vacated the leased premises, and on that date it mailed a notice of termination to the plaintiffs and delivered possession of the premises to the plaintiffs; therefore the defendant was not liable for the payment of rent.

On June 26, 1973, the plaintiffs commenced a second action against the defendant alleging three causes of action. In their first cause of action the plaintiffs sought damages in excess of $139,000 for the defendant's abandonment of the premises and failure to pay rent from September, 1972, through the end of the lease term, May, 1981, and for the defendant's failure to pay real estate taxes which it was obligated to pay under the terms of the lease. In their second cause of action the plaintiffs alleged that the defendant negligently caused damage to the premises in the amount of $1,200. The third cause of action alleged that the plaintiffs sold the property for $100,000; that they had invested $317,500 in the property; and that by breaching the lease the defendant had caused the plaintiffs damages in the amount of $217,500.

The trial court ordered the two cases consolidated for trial, and the issues were tried to the court.

At the conclusion of the trial, the trial judge made extensive findings of fact and pronounced the following conclusions of law:

"1. Plaintiffs' claim for $1,200 for damages to the leased premises, objected to by defendant, is allowed for the sum of $1,200 plus interest from the date of this Court's decision, February 28, 1977.

"2. Plaintiffs' claim for real estate taxes, objected to by defendant, is allowed for the sum of $3,019.68 plus interest at the rate of 5% per annum from September 28, 1972, the date of the breach of the lease, to February 28, 1977, the date of this Court's decision, said interest being in the sum of $666.84, for a total sum of $3,686.52.

"3. Plaintiffs' loss of rental under the lease from October 1972 through February 1973, objected to by the defendant, at the rate of $800.00 per month in a total sum of $4,000.00, with interest from February 1st, 1973 to February 28th, 1977, the date of this Court's decision, at the rate of 5% per annum, said interest being in the sum of $814.79, for a total of $4,814.79.[1]

"4. For breach of the lease, objected to by the defendant, in the sum of $91,586.00 with interest from February 28, 1977, the date of this Court's decision.

"5. That in total, including interest as above specified, the plaintiffs are entitled to Judgment in the sum of $101,287.31. In addition thereto, the plaintiffs are entitled to interest on said sum of $101,287.31 at the rate of 7% per annum from the date of this Court's decision on February 28, 1977 to the date that Judgment is entered. Further, that the plaintiffs are entitled to Judgment for their statutory costs and disbursements."

Judgment was thereupon entered, awarding the plaintiffs damages in the sum of $101,287.31, together with interest in the sum of $2,599.70, plus costs and disbursements of the action in the sum of $219.08, all of which totaled $104,108.09.

We are of the opinion that the following facts are also relevant to the issues raised on this appeal.

The lease contained a covenant for quiet enjoyment of the leased premises which provided as follows:

*"Quiet Enjoyment.* The landlord covenants that the Tenant, on payment of the rent herein reserved and the performance of agreements, covenants and conditions on the part of the Tenant to be performed and observed herein contained, shall and may, peaceably and quietly, have, hold and enjoy the premises demised herein throughout the term hereof and of any renewal thereof, free from molestation, eviction or disturbance by the landlords or any person or persons claiming by, through or under the landlord, or by any other person or persons whomsoever."

---

[1] The base rent for the leasehold premises was $1,000 a month and a portion thereof was rented by the plaintiffs for the period set forth in conclusion 3 for $200 per month.

It was for an alleged breach of this covenant by the plaintiffs that the defendant terminated the lease in September, 1972.

There was testimony that during the term of the lease the area near 27th and Center streets, where the leasehold property was located, declined as a business area when it became part of the "inner core." Many businesses closed, many businesses had trouble with shoplifting, vandalism and break-ins, and as a result of these incidents and because of attacks on clerks and office help, merchants were having trouble keeping employees. The defendant also experienced these problems.

The defendant sustained repeated water damage from water that came from the second floor tenants. However, there is no evidence as to how much damage was sustained.

In 1962, there was a fire in the leased premises which resulted in damage. In 1965, an automobile smashed into the building and caused a business interruption. The plaintiffs expended $120,000 to repair the building. On May 22, 1971, there was another substantial fire loss and break-in which caused another serious interruption in the defendant's business.

On September 28, 1972, the defendant sent a letter to the plaintiffs which informed them that the defendant was terminating the lease "for a number of good and sufficient reasons, among which are the following:

"1. Constant breaches of the quiet enjoyment provisions contained in Par. 17 of said Lease, committed by tenants of the upper floors of the said building, which have destroyed the Company's ability to make proper use of the store premises.

"2. Various other improper acts of upper floor tenants in said building which have been disturbing and destroying the Company's ability to continue to operate the leased premises for its retail store business.

"3. Failure of the Landlords to make necessary repairs of constant damage to the leased premises.

"4. The foregoing constitute a constructive eviction of the L. Wiemann Company from the leased premises."

The defendant had removed all its property from the premises and it sent the keys to the premises with the letter.

After the defendant vacated the premises, the plaintiffs inspected the property and found that the wall paneling was removed from the wall, three windows were broken, the electrical outlets in the floor were pulled up and exposed, and there was a hole approximately 3 by 5 feet cut through the floor. The plaintiffs expended $1,200 in repairing the damage.

After the defendant terminated the lease, the plaintiffs attempted to relet the premises. They advertised, placed signs in the windows and contacted people who they thought would be interested in renting the premises. The plaintiffs rented a portion of the premises to another company on a month-to-month tenancy at $200 per month commencing in October, 1972.

On February 28, 1973, the plaintiffs sold the property for $100,000, and conveyed title to the property and delivered possession thereof to the purchaser free and clear of all encumbrances, and free of the lease. The conveyances contained the following provision:

"Seller reserves the right to sue the Wiemann Company for breach of its lease at subject premises, and the proceeds resulting from such action or judgment rendered thereupon shall belong to seller."

A real estate appraiser testified that the lease had a present value of $91,586 assuming that the lease was in force and effect. He capitalized the future monthly rent of $1,166.66 with a factor of eight percent for eight years and eight months, from October 1, 1972, to May 31, 1981. On cross-examination he stated that when he made his evaluation he was unaware that the plaintiffs had

sold the property and turned over possession on February 28, 1973, and that if the plaintiffs were not entitled to collect rent under the lease, the lease had no value.

We are of the opinion that this case presents the following issues:

1. Was the defendant justified in terminating the lease?

2. Was the defendant liable for future rent to the end of the term of the lease?

3. Were the plaintiffs entitled to recover the estimated cost of repairs to the premises?

4. Were the plaintiffs entitled to recover certain "overage" real estate taxes?

5. Were the plaintiffs entitled to prejudgment interest on the damages for the "overage" real estate taxes and the loss of rent prior to the sale of the premises?

6. Were the plaintiffs entitled to prejudgment interest on the damages for future rent caused by the breach of the lease?

## BREACH OF LEASE.

The defendant terminated the lease on September 28, 1972, eight years and eight months before the end of the lease term. The defendant alleges, however, that it was justified in terminating the lease because the plaintiffs breached the covenant of quiet enjoyment and their action constituted a constructive eviction.

A constructive eviction constitutes a breach of the covenant for quiet enjoyment. *Hannan v. Harper*, 189 Wis. 588, 596, 208 N.W. 255 (1926). Any act of the landlord or of anyone who acts under authority or legal right given to him by the landlord which so disturbs the tenant's enjoyment of the premises or so interferes with his possession of the premises as to render them unfit for

occupancy for the purposes for which they are leased, is an eviction, and whenever it takes place, the tenant is released from the obligation under the lease to pay rent accruing thereafter. *Bahcall v. Gloss,* 244 Wis. 473, 475, 12 N.W.2d 674 (1944) ; *Bruckner v. Helfaer,* 197 Wis. 582, 222 N.W. 790 (1929) ; *Hannan v. Harper, supra,* at 596; *Wade v. Herndl,* 127 Wis. 544, 547, 107 N.W. 4 (1906).

In a more recent case, *Schaaf v. Nortman,* 19 Wis.2d 540, 543, 544, 120 N.W.2d 654 (1963), the court set forth certain general principles regarding constructive eviction:

" 'It is now well established that any disturbance of the tenant's possession by the landlord, or someone acting under his authority, which renders the premises unfit for occupancy for the purposes for which they were demised or which deprives the tenant of the beneficial enjoyment of the premises, causing him to abandon them, amounts to a constructive eviction, provided the tenant abandons the premises within a reasonable time.'

" 'A mere slight temporary inconvenience to the tenant does not justify him in throwing up his lease. A trivial breach is not sufficient, but the breach must be substantial and of such duration that it can be said that the tenant has been deprived of the full use and enjoyment of the leased property for a material period of time. . . .

" 'The landlord is entitled to notice . . . and has a reasonable time after notice is given to remedy the defect complained of, and until such time has elapsed the tenant has no right to quit the premises because of the alleged breach.' " (Footnotes omitted.)

The evidence and findings indicate that there were instances when the activities of second floor tenants disturbed and interfered with the normal operation of the defendant's business and from time to time resulted in some minor damage. The most recent of those incidents occurred in August, 1971, when flooding from an upstairs

apartment's overflowing toilet damaged some merchandise in an amount less than $500. Other more serious damage had previously occurred. In 1962, a fire seriously interrupted the defendant's business and resulted in an expenditure of $17,150, but the plaintiffs promptly had the damage repaired. In 1965, an automobile collided with the building, causing another business interruption, but the plaintiffs again promptly had the damage repaired. In May, 1971, there was another substantial fire loss again causing a serious interruption in the defendant's business and the defendant stopped paying rent in June, 1971. The plaintiffs promptly had the damage repaired. In July, 1971, the plaintiffs sued the defendant for the June and July rent. The parties entered into a stipulation which resulted in the dismissal of the case, and the defendant resumed paying rent.

The above-mentioned incidents did not amount to a deprivation of the beneficial enjoyment of the premises. In order for a constructive eviction to exist, the tenant must be deprived of the full use and enjoyment of the leased property for a *material period of time*. *Schaaf v. Nortman, supra,* at 544. The evidence indicates that the damage to the premises which occurred in 1962, 1965, and 1971, was promptly repaired by the plaintiffs. Thus, such damage caused no more than a temporary inconvenience to the defendant and would not justify it in terminating the lease.

In this case, damage to the premises occurred in 1962, 1965, and May, 1971, yet the defendant did not terminate the lease until September, 1972. The plaintiffs and defendant were parties in a lawsuit in July, 1971, which involved the issues of unpaid rent and quiet enjoyment. The dispute was settled and the case dismissed, and the defendant resumed payment of rent. Constructive eviction can only take place when the tenant abandons the premises within a reasonable time after a substantial

breach of the lease. Our attention is directed to no such breach after July, 1971. The facts of this case would not support a finding that the defendant abandoned the demised premises within a reasonable time after any alleged breach.

The defendant seems to complain that its business declined because of the deterioration of the neighborhood around the leased premises. This is not a condition over which the plaintiffs had any control, and in order for there to be a constructive eviction, the disturbance of the tenant's possession or enjoyment of the premises must be caused by the landlord or someone acting under his authority.

Finally, if there is a substantial breach of a lease, the landlord is entitled to notice and has a reasonable time after notice is given to remedy the defect. *Id.* at 544. In this case, the defendant did not give the plaintiffs notice to correct the damage which resulted from the aforementioned incidents. The plaintiff did, however, have the damage repaired. The defendant gave a notice to the plaintiffs, but this was a notice of termination. The defendant did not state what defects needed to be corrected and did not give the plaintiffs time to correct any defects which might have existed. The defendant merely informed the plaintiffs that it was terminating the lease because certain unspecified actions by the plaintiffs and others constituted a constructive eviction. We are of the opinion the defendant presented no evidence to justify its termination of the lease.

## DAMAGES FOR FUTURE RENT.

The defendant alleges that the trial court erred in awarding the plaintiffs damages for future rent for the balance of the term of the lease. The defendant argues that the plaintiffs accepted its surrender of the property

when they sold the property and thus terminated the obligation of the defendant under the lease.

When a tenant vacates or abandons the leased premises before the end of the lease term, the landlord has a right to elect (1) to accept the surrender and terminate the lease or (2) to enter and take possession for the purpose of mitigating the damages for which the tenant is liable because of his breach of the lease. *Ross v. Smigelski,* 42 Wis.2d 185, 193, 166 N.W.2d 243 (1969) ; *Galvin v. Lovell,* 257 Wis. 82, 90, 91, 42 N.W.2d 456 (1950) ; *Weinsklar Realty Co. v. Dooley,* 200 Wis. 412, 415, 228 N.W. 515 (1930).

". . . The election to enter for the purpose of mitigating damages may be evidenced by formal notice or by other proper means constituting such unequivocal act as would amount to an election of remedies in a proper case.

"The mere entry and taking possession of the premises for the purpose of leasing the same does not constitute such an election, because it is an equivocal act,—something to be done by the landlord regardless of whether his purpose be to terminate the lease or merely to perform his legal duty to mitigate damages.

"The right to elect which course he will pursue remains with the landlord until he makes his election by taking some step which clearly evidences an intent to make a choice between the two inconsistent remedies that are open to him. . . ." *Weinsklar Realty Co. v. Dooley, supra,* at 415.

Upon the tenant's surrender of the leased premises, the landlord has a duty to exercise reasonable diligence to re-rent the premises in order to mitigate damages. *Sprecher v. Weston's Bar, Inc.,* 78 Wis.2d 26, 42, 253 N.W.2d 493 (1977) ; *Patton v. Milwaukee Commercial Bank,* 222 Wis. 167, 171, 268 N.W. 124 (1936) ; *Strauss v. Turck,* 197 Wis. 586, 587, 222 N.W. 811 (1929) ; sec. 704.29, Stats.

In this case the evidence shows that the plaintiffs made reasonable attempts to find another tenant between October, 1972, and the sale of the property in February, 1973. Entry and taking possession of the premises for the purpose of leasing does not constitute an election of remedies because it is an equivocal act. *Richter v. Fassett,* 253 Wis. 101, 103, 33 N.W.2d 230 (1948) ; *Weinsklar Realty Co. v. Dooley, supra,* at 415. Re-renting a portion of the premises for these five months did not constitute such an unequivocal act of the landlord as to constitute acceptance of the surrender of the premises. Sec. 704.29 (4) (b), Stats. Specifically sec. 704.29 (4), states:

"*(4)* **Acts privileged in mitigation of rent or damages.** The following acts by the landlord do not defeat his right to recover rent and damages and do not constitute an acceptance of surrender of the premises:

"(a) Entry, with or without notice, for the purpose of inspecting, preserving, repairing, remodeling and showing the premises ;

"(b) Rerenting the premises or a part thereof, with or without notice, with rent applied against the damages caused by the original tenant and in reduction of rent accruing under the original lease ;

"(c) Use of the premises by the landlord until such time as rerenting at a reasonable rent is practical, not to exceed one year, if the landlord gives prompt written notice to the tenant that the landlord is using the premises pursuant to this section and that he will credit the tenant with the reasonable value of the use of the premises to the landlord for such a period ;

"(d) Any other act which is reasonably subject to interpretation as being in mitigation of rent or damages and which does not unequivocally demonstrate an intent to release the defaulting tenant."

This court has held that when the landlord occupies the premises for his own use or takes exclusive possession, he accepts the tenant's surrender and terminates the lease,

and he cannot collect rent which would have accrued under the lease subsequent to the surrender. *Galvin v. Lovell, supra,* at 92; *Richter v. Fassett, supra,* at 104; *Mahonna v. Chaimson,* 214 Wis. 396, 400, 253 N.W. 391 (1934); *West Concord Milling Co. v. Hosmer,* 129 Wis. 8, 13, 107 N.W. 12 (1906).

In *Anderson v. Andy Darling Pontiac, Inc.,* 257 Wis. 371, 43 N.W.2d 362 (1950), after the lessee vacated the premises the lessors took possession and resumed operation of a business on their own account. The lessors gave a written notice to the lessee which stated that they ". . . 'will . . . re-enter the premises described in said lease and will repossess said premises for the purpose of mitigation of damages thereunder, and will not waive any of their rights, legal or equitable, to any cause of action they may have by virtue of the said breach of said agreements.' " *Id.* at 373. The court held that the lessors accepted the lessee's surrender, stating:

"Plaintiffs contend that their re-entry does not constitute an acceptance of defendant's surrender of the leased premises; that their purpose to the contrary is expressed in the notice served upon defendant which recites that the re-entry was made only for the purpose of mitigating damages. Their expression is not consistent with their conduct. An intention to re-enter for the purpose of minimizing damages must be made clear at the time of re-entry. *Mahonna v. Chaimson,* 214 Wis. 396, 253 N.W. 391. Re-entry for the purpose of minimizing damages only must be read out of all the circumstances, from the conduct as well as from the expression of the landlord. Immediately upon surrender the plaintiffs took possession of the premises and by a newspaper advertisement announced their intention to resume the same character of business on their own account which they and the defendant had previously conducted therein. They made no effort to obtain a new tenant until nearly two months after the surrender and after this action was commenced. Their conduct indicates their intention to take possession for the propose of resuming the business

which they had previously conducted on the premises."
*Id.* at 374.

In the instant case, the plaintiffs made reasonable efforts to re-rent the premises after the defendant vacated and they were able to re-rent a part of the premises for a period of five months. In February, 1973, they sold the premises free and clear of all encumbrances, including the lease. The fact that the plaintiffs reserved the right to sue the defendant for breach of the lease and hold it liable for rent for the balance of the lease term is inconsistent with the sale of the property.

The act of selling the property in February, 1973, evidences a clear intent to make the election between accepting the surrender and terminating the lease, and entering and taking possession of the premises for the purpose of mitigating damages.

We conclude that the plaintiffs accepted the surrender of the premises and terminated the lease, and therefore they are deprived of the right to recover damages for future rent after they sold the premises.

Since we determine that the actions of the plaintiffs constituted acceptance of the surrender of the premises and termination of the lease, we do not reach the issue of whether the trial court denied the defendant the benefit of a finding regarding mitigation of damages.

The defendant also alleges that the plaintiffs are not entitled to recover for damages to the interior of the premises. The trial court found that the defendant was indebted to the plaintiffs for the costs of repairing the premises in the amount of $1,200. That finding is not against the great weight and clear preponderance of the evidence. The evidence shows that when the defendant vacated, the plaintiffs inspected the property and found that the wall paneling was removed from the wall,

the plaster was damaged, three windows were broken, the electrical outlets in the floor were pulled up and exposed, and there was a hole approximately 3 by 5 feet cut through the floor. The fair and reasonable cost of repairing these damages was $1,200, and thus, the plaintiffs were entitled to recover this amount from the defendant.

The defendant further contends that the plaintiffs should not be entitled to recover damages for "overage" real estate taxes because the plaintiffs waived any claim for such taxes. The trial court found that by virtue of the lease, the defendant was indebted to the plaintiffs for real estate taxes from 1955 through 1971 in the sum of $3,019.68. That finding is not against the great weight and clear preponderance of the evidence.

The defendant points out that the lease contains a covenant which provides that the tenant shall pay one-half of the real estate taxes on the property which exceed $4,000 per year; and the landlord, after paying the entire real estate tax, must furnish the tenant a receipted bill for the real estate taxes and the tenant is required to pay his share of the "overage" within ten days. The defendant alleges that the landlord must furnish the tenant a bill for the real estate taxes in order for the tenant to be required to pay the "overage." However, there is no evidence that the receipt of the bill was a condition precedent to the tenant's obligation to pay the "overage," and the trial court did not find it to be such.

Finally, the defendant argues the trial court erred in awarding prejudgment interest on certain items of damages. The plaintiffs were awarded damages for the "overage" real estate taxes in the sum of $3,019.68, plus interest at the rate of five percent per year from September 28, 1972, the date of the breach of the lease, to

February 28, 1977, the date of the court's decision. The interest amounted to $666.84. The trial court also awarded the plaintiffs damages for loss of rent under the lease from October, 1972, through February, 1973, at the rate of $800 per month, for a total of $4,000. The court allowed interest on this sum at the rate of five percent from February 1, 1973, to February 28, 1977, which amounted to $814.79.

Prejudgment interest may be awarded where the amount of damages is ascertainable or determinable prior to judicial determination, either because the damages are liquidated or because there is a reasonably certain standard of measurement. *City of Merrill v. Wenzel Brothers, Inc.,* 88 Wis.2d 676, 697, 277 N.W.2d 799 (1979) ; *Klug & Smith Co. v. Sommer,* 83 Wis.2d 378, 384, 265 N.W.2d 269 (1978) ; *Pappas v. Jack O. A. Nelsen Agency, Inc.,* 81 Wis.2d 363, 374, 260 N.W.2d 721 (1978) ; *Wyandotte Chemicals Corp. v. Royal Electric Mfg. Co., Inc.,* 66 Wis.2d 577, 225 N.W.2d 648 (1975).

The trial court made detailed computations to support its finding that the defendant was indebted to the plaintiffs for real estate taxes in the sum of $3,019.68. The computation of this sum was readily ascertainable on February 28, 1972. Thus, the award of prejudgment interest on this damage award was proper.

The trial court also awarded prejudgment interest on the sum of $4,000 as damages for loss of rent from October 1, 1972, through February, 1973. None of the exhibits concerning this rental transaction are in the record. Therefore, it cannot be said that the trial court erred in concluding that the amount of $4,000 was determinable in February, 1973, and subject to prejudgment interest.

On their cross-appeal, the plaintiffs contend that the trial court erred in not allowing prejudgment interest on the damages for breach of the lease which amounted to $91,586. We do not consider this issue because we have held that the plaintiffs accepted the defendant's surrender of the premises and terminated the lease and thus were not entitled to damages for such loss of future rent.

We therefore conclude that the portion of the judgment awarding the plaintiffs damages in the amount of $91,586 for loss of future rent for breach of the lease should be reversed. That portion of the judgment awarding the plaintiffs damages for the cost of repairing the premises, for the "overage" real estate taxes and for loss of rent from October, 1972, through February, 1973, less rent they received in mitigation of damages, plus interest on each such item of damages as determined by the trial court, is affirmed. Taxable costs on appeal are awarded to the appellant.

*By the Court.*—Judgment reversed in part; affirmed in part.