CCS NORTH HENRY, LLC, Plaintiff-Respondent,

v.

Marge TULLY d/b/a By the Light of the Moon,
Defendant-Appellant.

Court of Appeals

*No. 00–0546. Submitted on briefs July 20, 2000.—Decided
December 14, 2000.*

2001 WI App 8

(Also reported in 624 N.W.2d 847.)

535

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David L. Mandell* of *Mandell, Ginsberg & Meier* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Cora L. Higginbotham* of *Cora L. Higginbotham Law Office* of Madison.

Before Roggensack, Deininger, JJ. and William Eich, Reserve Judge.

¶ 1. ROGGENSACK, J. Marge Tully appeals the judgment for damages awarded by the circuit court for her breach of a lease with CCS North Henry, LLC. She claims that because a successor tenant's monthly payments were greater than those due under her lease, as well as being for a longer period of time, the amount of the excess in monthly payments received from that tenant over those that had been due from her should have been offset against the amount of rent owed by her before the successor tenancy began. Because the circuit court refused to make such an offset, she claims error. However, because we conclude as a matter of law that CCS North Henry elected to accept surrender of the premises, it owed no offset to Tully. Therefore, we affirm the judgment of the circuit court.

## BACKGROUND

¶ 2. On May 22, 1997, Tully entered into a commercial lease with 202 North Henry Street Joint Venture which was assigned to CCS North Henry, Tully's landlord at all times material to this lawsuit. Her tenancy began June 1, 1997, and was to terminate May 31, 2002. Tully breached the lease by moving out on February 3, 1999, and ceasing to pay rent. Rental payments under the lease were $1,362.90 per month

for 1999 and increased incrementally each year thereafter.

¶ 3. CCS North Henry re-let the premises to the State Street Army Store at $1,785 per month rent beginning May 1, 1999. The lease was to terminate April 30, 2003. As with Tully's lease, Army Store's lease had an escalation clause that increased the monthly rent each year according to a schedule set out in the lease. However, to obtain this new tenant, CCS North Henry paid $3,780 to a realtor and paid $88.41 to change the locks.

¶ 4. On June 10, 1999, CCS North Henry sued Tully in small claims court for breach of the lease. When CCS North Henry did not obtain a judgment it believed was sufficient, it requested a trial *de novo* in circuit court. After a trial to the court held December 29, 1999, the circuit court entered a judgment for $4,953.31 in rent lost before Army Store's tenancy began and partial expenses.[1] The court also awarded attorney's fees of $1,322.70, for a total judgment against Tully of $6,276.02.[2]

¶ 5. On appeal, Tully argues that because Army Store's tenancy began June 1, 1999 and garnered $474.60 more per month in rent during the first year than Tully was obligated to pay, the excess of Army Store's rental payments over those that had been due from Tully should have been offset against the amount of rent owed by Tully prior to Army Store's tenancy. She points out that at the time of trial, CCS North Henry had already collected $3,322.20 in rent above

---

[1] Even though CCS North Henry had paid a realtor $3,780 to find a new tenant, it sought payment from Tully of only $1,700.

[2] The sum of the two portions of the judgment is actually one cent less than the judgment entered.

that which she had been obligated to pay for the last seven months of 1999. In support of her argument, Tully cites common law from other jurisdictions, WIS. STAT. § 704.29(2) (1997–98)[3] and the written lease.

¶ 6. The circuit court concluded that CCS North Henry had the option of continuing to hold Tully to the full term of the lease, thereby leaving open the possibility of damages above those awarded, to which future damages Army Store's rent payments would have been an offset. Or, CCS North Henry could terminate Tully's lease when Army Store's tenancy began and sue for damages that had accrued only up to that time. On appeal, Tully argues that CCS North Henry cannot make that election, but rather it must credit all amounts received from Army Store against damages accruing under her lease, yet she implies that she should be released from obligations accruing after Army Store took over the premises. CCS North Henry contends that the circuit court correctly decided Tully's liability and that Tully's appeal is frivolous. It asks for attorney's fees and costs necessitated by the appeal.

## DISCUSSION

### Standard of Review.

■

¶ 7. The interpretation of WIS. STAT. § 704.29 is a question of law, which we review *de novo*. *Shelton v. Dolan*, 224 Wis. 2d 334, 337, 591 N.W.2d 894, 895 (Ct. App. 1998). We also decide as a matter of law whether an appeal is frivolous. *J.J. Andrews, Inc. v. Midland*, 164 Wis. 2d 215, 225, 474 N.W.2d 756, 760 (Ct. App.

---

[3] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

1991) (citing *Vierck v. Richardson*, 119 Wis. 2d 394, 399, 351 N.W.2d 169, 172 (Ct. App. 1984)).

## Damages.

¶ 8. This appeal focuses on whether the circuit court correctly calculated the damages due to CCS North Henry because of Tully's breach of her lease. In Wisconsin, damages for the breach of a written lease when a successor tenant takes possession of the premises during a period of time coextensive with the original lease are impacted upon by three areas of law: (1) landlord/tenant law, (2) WIS. STAT. § 704.29, and (3) contract law. We conclude that all three areas support the judgment of the circuit court in this case.

¶ 9. To better explain the impact of the statutes and contract provisions relevant to this appeal, we begin with a general review of the common law of remedies available to landlords and how Tully's contention fits within them.

### 1. Landlord/Tenant Law.

¶ 10. After a tenant has breached its lease and vacated the premises, a tenant's liability for the breach is evaluated in part by determining whether the landlord has accepted the tenant's return in a manner that effects a legal surrender of the premises. 51C C.J.S. *Landlord & Tenant* § 122 (1968). "Surrender" entails the tenant's giving up of the lease before its expiration and the landlord's acceptance of the tenant's relinquishment of rights, either in fact or as implied at law. 49 AM. JUR. 2D *Landlord & Tenant* § 242 (1995).

¶ 11. Once the premises have been returned to the landlord before the expiration of the lease, a landlord may either: (1) accept the tenant's surrender and

re-enter the premises to re-let them for the landlord's own account, thereby releasing the tenant from any further liability for rent, or (2) notify the tenant that it is re-entering and re-letting the premises for the tenant's benefit and therefore the monies received from the successor tenancy will be fully credited to the initial tenant's obligation under the lease. *See Kersten v. H.C. Prange Co.*, 186 Wis. 2d 49, 53, 520 N.W.2d 99, 101 (Ct. App. 1994); *First Wis. Trust Co. v. L. Wiemann Co.*, 93 Wis. 2d 258, 271, 286 N.W.2d 360, 366 (1980). If the premises are re-rented for the initial tenant's account, that tenant remains responsible for the payments due on the underlying lease until its term has concluded. 49 AM. JUR. 2D *Landlord & Tenant* § 243.

¶ 12.	Most legal treatises agree that the question of whether a re-letting shows an acceptance of surrender depends on whether the landlord has re-let the property for his own account or for the tenant's account. 49 AM. JUR. 2D *Landlord & Tenant* § 252. Ordinarily, executing a new lease for a term that extends beyond that term set out in the original lease indicates the landlord's intent to accept surrender. 51C C.J.S. *Landlord & Tenant* § 125(8).

██

¶ 13.	In this case, we consider whether CCS North Henry took possession of the premises for the purposes of mitigating damages and thereby entered into a lease with Army Store for the account of Tully or whether it accepted surrender of the premises and rented to Army Store for its own account, because those are mutually exclusive choices. *See First Wis. Trust Co.*, 93 Wis. 2d at 271, 286 N.W.2d at 366; WIS. STAT. § 704.29(4)(b). As the court stated in *First Wisconsin Trust*:

> The right to elect which course he will pursue remains with the landlord until he makes his election by taking some step which clearly evidences an intent to make a choice between the two inconsistent remedies that are open to him.

*First Wis. Trust*, 93 Wis. 2d at 271, 286 N.W.2d at 366 (quoting *Weinsklar Realty Co. v. Dooley*, 200 Wis. 412, 415, 228 N.W. 515, 517 (1930). However, as the court instructs, the mere entry and taking possession of the premises does not necessarily constitute acceptance of surrender as a matter of law. That act is equivocal, as the landlord's obligation to mitigate damages by re-letting the premises could cause it to re-rent without the intent to accept the surrender of the premises, and it is the landlord who has the right to elect which remedy it will select.

■

¶ 14. Here, CCS North Henry has refused to apply the rents received from Army Store to Tully's obligation under her lease, even though Tully requested that it do so. Additionally, it rented to Army Store for a period of time beyond that covered by Tully's lease. Therefore, under the undisputed facts of this case, we conclude that, as a matter of law, CCS North Henry elected to accept surrender when it obtained Army Store as its tenant for the premises. In making this election, it capped Tully's damages at the date of Army Store's tenancy, and therefore it cannot look to Tully for any damages beyond June 1, 1999.[4] Accord-

---

[4] The circuit court made a statement which was not necessary to its decision, but which could indicate that it was not certain whether CCS North Henry had released Tully from further liability under the lease. However, the remedies available to CCS North Henry are mutually exclusive. *First Wis. Trust Co. v. L. Wiemann Co.*, 93 Wis. 2d 258, 271, 286 N.W.2d 360, 366

ingly, because CCS North Henry elected to rent the premises for its own account, it has no obligation under the common law to credit Tully with any rents it received from Army Store.

¶ 15. Tully argues that *Wanderer v. Plainfield Carton Corp.*, 351 N.E.2d 630 (Ill. App. 1976), suggests an opposite result. However, our reading of *Wanderer* shows that it, too, recognizes the election of remedies for a landlord. Therefore, if a landlord rents for the tenant's account, the tenant gets credited for rents received but stays liable on the lease, and if the landlord rents for its own account, then no credits for rents received are given to the tenant. *Id.* at 636–37.[5]

### 2. *Statutory Provisions.*

¶ 16. Tully maintains that Wis. Stat. § 704.29(2) requires a landlord to credit the tenant with rents received from a subsequent tenant. The statute states in relevant part:

> MEASURE OF RECOVERY. In any claim against a tenant for rent and damages, or for either, the

(1980). Therefore, it could not have retained its rights against Tully under her lease without crediting her with the rents received from Army Store, and this it has refused to do.

[5] CCS North Henry cites *Kersten v. H.C. Prange Co.*, 186 Wis. 2d 49, 520 N.W.2d 99 (Ct. App. 1994), for the proposition that the "date of mitigation" sets the date at which damage awards are concluded. We note that *Kersten* approves retaining jurisdiction in the circuit court after the initial judgment to add additional damages where there has not been a surrender of a lease. It also describes the types of damages that can be computed when a lease has been breached and the trial court is trying to determine what items are compensible. *Kersten* is in accord with the election of remedies discussion above.

amount of recovery is reduced by the net rent obtainable by reasonable efforts to re-rent the premises. Reasonable efforts mean those steps which the landlord would have taken to rent the premises if they had been vacated in due course, provided that such steps are in accordance with local rental practice for similar properties.

¶ 17. When we are asked to apply a statute whose meaning is in dispute, we direct our efforts to determining legislative intent. *Truttschel v. Martin,* 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997). We begin with the plain meaning of the language used in the statute. *Id.* If the statute plainly sets forth legislative intent, our inquiry ends, and we must apply the language chosen by the legislature to the facts of the case. *Id.* Additionally, when we are asked to construe one subsection of a statute which has multiple subsections that deal with the same topic, we do not read a subsection in isolation from the rest of the statute. *See City of Milwaukee v. Milwaukee County,* 27 Wis. 2d 53, 56, 133 N.W.2d 393, 395 (1965).

¶ 18. Tully's argument does not assert that Wis. Stat. § 704.29(2) is ambiguous, but instead she asks that we read § 704.29(2) in isolation. CCS North Henry contends that all the subsections of § 704.29 must be read together to understand subsec. (2). We agree with CCS North Henry.

¶ 19. Additional subsections within Wis. Stat. § 704.29 also bear on the issues presented in this appeal. For example, subsec. (4) addresses a landlord's option to re-rent the premises, but it states that doing so does not necessarily effect a surrender. Subsection (4) states in relevant part:

ACTS PRIVILEGED IN MITIGATION OF RENT OR DAMAGES. The following acts by the landlord do not defeat the landlord's right to recover rent and damages and do not constitute an acceptance of surrender of the premises:

. . . .

(b) Rerenting the premises or a part thereof, with or without notice, with rent applied against the damages caused by the original tenant and in reduction of rent accruing under the original lease;

Furthermore, subsec. (1) makes clear that the election of remedies established under the common law continues in the statutory scheme when it states that mitigation is required "unless the landlord has expressly agreed to accept a surrender of the premises and end the tenant's liability."

¶ 20. Our review of WIS. STAT. § 704.29 in its entirety leads us to conclude that subsec. (2), when read in conjunction with subsecs. (1) and (4)(b), does not change the common law rule that gives the election of the remedy for a tenant's breach to the landlord. Subsection (2) addresses the landlord's obligation to mitigate its damages. If the landlord elects to continue to look to the breaching tenant for damages after a new lease has been entered into, then it assumes a statutory, as well as a common law, obligation to credit the tenant with all monies received under the new lease toward the tenant's obligations under the initial lease. Looked at another way, §§ 704.29(2) and (4)(b) are legislative equivalents of what occurs when a landlord rents for a tenant's account under the common law. If a landlord makes such an election, it functions as the agent of the tenant. As a result, any rental receipts resulting from the landlord's diligence in securing a

second tenant accrue to the first tenant's underlying obligation to the landlord.

¶ 21. Here, CCS North Henry elected to accept surrender of the premises under the statutes, as well as the common law, when it refused to credit Tully with the rents it received from Army Store pursuant to Wis. Stat. §§ 704.29(2) and (4)(b). Because CCS North Henry accepted Tully's surrender of the premises, § 704.29 does not require CCS North Henry to credit any payments received from Army Store to Tully's obligation incurred before Army Store's tenancy began.

### 3. Contract.

¶ 22. Tully also claims that her written lease requires CCS North Henry to credit her account for payments from Army Store. The lease did govern certain aspects of the parties' relationship, including a provision for remedies in the event of a default. That provision states in relevant part:

> In the event default is made by the Lessee . . . then the Lessor shall, without further notice, at its option, have the right to re-enter said Leased Premises, to remove the Lessee and all persons holding under it therefrom and to terminate this lease and repossess itself of the Leased Premises provided, however, that such repossession shall not constitute a waiver by Lessor of any other rights which it might have to enforce collection of rents for the balance of the term or to recover damages from Lessee for default in payment of rents.

¶ 23. However, the lease does not describe when re-letting would constitute an acceptance of surrender (a re-letting for the account of the landlord) or when re-

letting would be only mitigation of damages (a reletting for the account of the tenant). Additionally, the contract does not limit the right of the landlord to elect any remedy available under the common law. Therefore, it offers no support for Tully's claim to a credit for rental payments received from Army Store.

**Frivolous Appeal.**

¶ 24. CCS North Henry has moved this court to determine that, pursuant to WIS. STAT. § 809.25(3)(c)2., Tully's attorney knew or should have known that the appeal was without any reasonable basis in law or equity and could not be supported by a good-faith argument for extension, modification or reversal of existing law because Tully has cited no case law directly on point to support her theory. In response, Tully asserts that her argument does not require case law because this is a new and developing area of the law. We agree that Tully's appeal is not frivolous.

¶ 25. WISCONSIN STAT. § 809.25(3)(c) states in relevant part:

> In order to find an appeal or cross-appeal to be frivolous under par. (a), the court must find one or more of the following:
>
> . . .
>
> 2. The party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

¶ 26. CCS North Henry relies solely on the fact that no reported cases support Tully's argument. However, WIS. STAT. § 809.25(3)(c)2., which addresses an extension, modification or reversal of existing law, implies that to contravene that section there must be contrary precedent that Tully is ignoring without any reasonable basis for doing so. However, quite the contrary is true here; there is no precedent that Tully seeks to reverse.

¶ 27. Additionally, although we did not conclude that Tully's arguments on appeal were meritorious, they were well reasoned, particularly in light of the common law and WIS. STAT. § 704.29(4)(b), which would require exactly the remedy that Tully seeks if, as a matter of law, her lease was a continuing obligation, notwithstanding Army Store's tenancy. *J.J. Andrews*, 164 Wis. 2d at 226, 474 N.W.2d at 760.

## CONCLUSION

¶ 28. Because we conclude that as a matter of law CCS North Henry elected to accept surrender of the premises, it owed no offset to Tully for rents it collected from Army Store. Therefore, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.