Susann M. Vander Wielen, Plaintiff-Appellant,

v.

Ronald E. Van Asten, Defendant-Respondent.

Court of Appeals

*No. 2004AP1788. Submitted on briefs February 10, 2005.*
*—Decided September 22, 2005.*

2005 WI App 220

(Also reported in 706 N.W.2d 123.)

728

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Douglas D. Hahn* of *Menn, Teetaert & Beisenstein, Ltd.*, Appleton.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James R. Long* of *James R. Long Law Office*, Appleton.

Before Dykman, Vergeront and Deininger, JJ.

¶ 1. DEININGER, J. A landlord, Susann Vander Wielen, appeals a judgment that dismissed her claims against her former tenant, Ronald Van Asten, and awarded him $7,889.50 in attorney fees and costs. The landlord claims the trial court erred in determining that (1) the tenant was not a holdover, year-to-year tenant; (2) the landlord had accepted the tenant's surrender of the premises; and (3) the tenant, as the prevailing party, was entitled under the parties' lease to recover his reasonable attorney fees and costs.

¶ 2. We conclude, on the facts as found by the circuit court, the tenant became a holdover, year-to-year tenant when the landlord accepted his rent payments after the parties' lease expired. We also conclude, however, that the landlord accepted the surrender of the premises when she proposed to enter into a new lease with the tenant's successor, dealt exclusively with the successor and specified and accepted higher rent payments from the successor. Accordingly, the trial court did not err in dismissing the landlord's claims against the tenant for unpaid rent and other damages. Finally, because, under the terms of the parties' lease, the tenant was the "successful party" in this action

730

commenced by the landlord "for the enforcement of the terms and provisions" of the lease, the court properly awarded the tenant his attorney fees and costs.

## BACKGROUND

¶ 3. The circuit court, after conducting a bench trial, issued a written decision in which it made numerous factual findings. Our background summary is based largely on those findings, supplemented occasionally with specific evidence introduced by the parties at trial.

¶ 4. The landlord owns a commercial building in Appleton. She leased a portion of the building to the tenant for his laundry and dry cleaning business. The parties first entered into a commercial lease in 1991 and they extended it in 1997 through May 31, 2000. The most recent extension allowed for an additional extension if the parties could agree to it by March 1, 2000, but no extension was agreed to before that deadline. Instead, before the lease expired on May 31, the tenant informed the landlord that he was attempting to sell his business and did not wish to enter into another long-term extension of the lease. The tenant told the landlord that he wanted to stay only until he sold his business. The trial court found that "no agreement was expressly or otherwise entered into by the parties concerning [tenant]'s status as a holdover tenant."

¶ 5. The tenant continued to occupy the space through June and July of 2000, paying the rent called for in the expired lease for those two months, which the landlord accepted without comment. When the tenant's August rent payment was late, the landlord contacted him. The tenant informed the landlord that he had sold his business and that his successor would be paying the rent thereafter. The landlord sent the successor a copy

of the existing lease and a proposed new lease on August 18, 2000. The proposed new lease was to begin in September 2000 for a five-year term at an increase in rent over what the tenant had been paying. The successor did not sign the new lease, but he did pay the landlord the higher rent specified in the proposed new lease from September 2000 through January 2001. The trial court found that the landlord "accepted rent from and dealt exclusively with [the successor] from September 2000 until January 2001."

¶ 6. The successor notified the landlord that he planned to vacate the premises on November 30, 2000. The landlord responded with a letter dated November 16, 2000, informing the successor that "you are responsible until May 31, 2001 for rent of this unit." The successor ultimately vacated on January 19, 2001, having paid rent through the end of January. The trial court found that the premises were left "in reasonable condition," with only "the normal wear and tear to be reasonably expected" during ten years of occupancy by a laundry and dry-cleaning business. Rent for February 2001 and subsequent months remained unpaid as of the time of trial.

¶ 7. The trial court found that the tenant "was not given notice of any problems until after [the successor] had moved out." The landlord's first communication to the tenant after August 2000 was a letter dated February 5, 2001, from the landlord's counsel. The letter informed the tenant that the landlord deemed him a holdover tenant on a year-to-year basis under WIS. STAT. § 704.25(2)(a) (2003–04),[1] and that he was therefore liable for unpaid rent through May 31, 2001, plus other

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

costs incurred following the successor's vacation of the leased premises. The letter also informed the tenant that the landlord had offered the successor a lease, "but he refused to sign it. Had he signed a new lease with us, [the landlord] would have released you from your existing lease."

¶ 8. When the tenant refused to pay the amounts demanded, the landlord commenced this action against the tenant. Her complaint refers to and attaches the original lease between the parties and its extensions through May 31, 2000. The complaint seeks, in addition to unpaid rent and other costs and damages, the landlord's "actual reasonable attorneys fees, costs and expenses of collection up to and through this litigation, per *Paragraph 20* of the Lease." Following the trial, the circuit court concluded in a written opinion that (1) the tenant did not become subject to a year-to-year tenancy after May 31, 2000; (2) the landlord had "accepted the surrender of the premises" by the tenant "and termination of his lease"; and (3) the tenant was entitled to recover his reasonable attorney fees and costs.

¶ 9. The court entered a judgment that dismissed the landlord's complaint and awarded the tenant $7,889.50 for his attorney fees and costs. The landlord appeals, claiming the circuit court erred in each of its three conclusions.

## ANALYSIS

¶ 10. The landlord does not assert that any of the circuit court's factual findings are clearly erroneous. *See* Wis. Stat. § 805.17(2). Rather, her challenges are solely to the court's legal conclusions, which include the court's application of legal standards to the facts as

733

found and its interpretations of the parties' lease and several provisions of WIS. STAT. ch. 704. We thus have before us only questions of law, which we decide de novo. *See Kenyon v. Kenyon*, 2004 WI 147, ¶ 11, 277 Wis. 2d 47, 690 N.W.2d 251 (application of a legal standard to undisputed facts); *Deminsky v. Arlington Plastics Mach.*, 2003 WI 15, ¶ 15, 259 Wis. 2d 587, 657 N.W.2d 411 (contract interpretation); *State v. Setagord*, 211 Wis. 2d 397, 405–06, 565 N.W.2d 506 (1997) (statutory interpretation).

¶ 11. The landlord's first claim is that the circuit court erred in concluding that the tenant did not become a year-to-year holdover tenant following the termination of the parties' lease on May 31, 2000. WISCONSIN STAT. § 704.25(2)(a) provides that "[i]f premises are leased for a year or longer primarily for other than private residential purposes, and the tenant holds over after expiration of the lease, the landlord may elect to hold the tenant on a year-to-year basis." Paragraph (c) of this subsection explains when the landlord's election occurs:

> Acceptance of rent for any period after expiration of a lease or other conduct manifesting the landlord's intent to allow the tenant to remain in possession after the expiration date constitutes an election by the landlord under this section unless the landlord has already commenced proceedings to remove the tenant.

Section 704.25(2)(c). Finally, subsections (3) and (4) of the statute provide that, with certain exceptions, the "terms and conditions . . . of the original lease" govern during a holdover tenancy, but the parties may agree in their lease or thereafter that § 704.25 does not apply to their relationship. *See* § 704.25(3) and (4).

¶ 12. We agree with the landlord that, when the plain language of WIS. STAT. § 704.25 is applied to the undisputed facts and those found by the trial court, no other conclusion is possible than that the tenant became a holdover year-to-year tenant when the landlord accepted his rent payment for the month of June 2000. *See State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " (citation omitted)). The parties' lease was of non-residential property for a term of more than one year, and nothing in the lease or extension agreements disavows the applicability of § 704.25. The trial court specifically found that, although the tenant informed the landlord of his intention to stay beyond May 31st only for so long as it took him to sell his business, the parties reached no agreement "expressly or otherwise" concerning the tenant's status as a holdover tenant. Thus, when the landlord, having not commenced proceedings to remove the tenant, accepted rent from him for June of 2000, that act constituted her election "to hold the tenant on a year-to-year basis." *See* WIS. STAT. § 704.25(2)(a) and (c).

¶ 13. The tenant argues, however, that the statute creates only a rebuttable presumption that the landlord elected to treat him as a tenant from year-to-year. He also asserts that the presumption may be rebutted " 'by proof of an express agreement for a month to month tenancy . . . or by other circumstances,' " quoting *Rottman v. Bluebird Bakery, Inc.*, 3 Wis. 2d 309, 311, 88 N.W.2d 374 (1958). The landlord points out that *Rottman* and several other cases the tenant relies on predate the enactment of WIS. STAT. § 704.25(2)(c), which now specifies that the acceptance

of rent "*constitutes* an election by the landlord" (emphasis added), not merely a rebuttable presumption that an election has occurred. Moreover, as we have noted, the trial court expressly found that the parties had no express or implied agreement for a month-to-month tenancy or any other terms regarding the tenant's holdover status. Based on the trial court's findings, the tenant had, at most, a unilateral expectation that he was bound only on a month-to-month basis, but one party's hopes or expectations do not avoid the effect of the statute—the agreement of both parties is required. *See* § 704.25(4).

¶ 14. The balance of the tenant's argument on this point suggests that the post-expiration acceptance of rent by a commercial landlord should be deemed to constitute an election to hold the tenant from year-to-year only if the landlord gives notice of the election to the tenant. We reject this suggestion because no such requirement may be found in the language of WIS. STAT. § 704.25.

¶ 15. Rather, we agree with the landlord that, absent contrary provisions in the parties' lease, WIS. STAT. § 704.25 requires a commercial landlord to choose among three courses of action when a tenant remains in possession of the leased premises after the expiration of a lease: (1) the landlord may commence an action to remove the tenant; (2) the landlord may reach an agreement with the tenant regarding the terms of the tenant's post-expiration occupancy; or (3) if neither of the first two have occurred, the landlord may accept rent from the tenant for the tenant's post-expiration occupancy, thereby creating a holdover tenancy whose duration is determined by the statute, in this case, year-to-year. In short, the statute allows the parties to

736

an expiring lease to agree on terms for any post-expiration occupancy of the leased premises, but in the event they cannot or do not reach an agreement, it provides a bright-line rule to govern their relationship.

¶ 16. We conclude, therefore, upon the landlord's acceptance of the tenant's rent payment for June 2000, both parties were bound to a tenancy terminating on May 31, 2001, on the same terms and conditions as set forth in the expired lease. The existence of a one-year holdover tenancy does not mean, however, that the landlord could not subsequently accept a surrender of the premises from the tenant and release him from his obligations as a holdover tenant. The trial court concluded that a surrender and acceptance occurred, which conclusion the landlord cites as the court's second reversible error. We conclude the trial court correctly determined that the landlord's actions during and after August 2000 constituted the landlord's acceptance of the tenant's surrender of the premises.

■

¶ 17. The landlord's arguments on the acceptance-of-surrender issue are largely premised on her reading of several provisions in Wis. Stat. ch. 704, and, to a lesser extent, on her claim that the record lacks evidence of an unequivocal act on her part that clearly indicated an intent to accept the tenant's surrender of the premises. We address her statutory arguments first.

¶ 18. According to the landlord, Wis. Stat. § 704.19, when applied to the facts as found by the trial court, compels a conclusion that the year-to-year tenancy could not have terminated earlier than May 31, 2001. She contends that, because the tenant did not inform her of his sale of his business until after it had occurred and thereafter failed to pay rent, the tenant effectively gave notice of his intent to terminate the

holdover tenancy in August 2000, which is when the landlord first learned of the tenant's "removal" from the premises. *See* § 704.19(6).[2] The landlord next points to § 704.19(2)(b),[3] which provides that a notice of termination given by either party to a year-to-year tenancy becomes effective only at the end of the rental year during which notice is given.

¶ 19. The flaw in the landlord's present argument, however, is that WIS. STAT. § 704.19 governs only the termination of a tenancy on actual or constructive notice by one of the parties. The statute, on its face, does *not* apply when "[t]ermination has been effected by a surrender of the premises." Section 704.19(2)(a)2. Whether a surrender of the premises was "effected" is precisely the point at issue in this case. If the landlord accepted the tenant's surrender of the premises in August 2000, the tenancy terminated then; if not, because we conclude that a year-to-year holdover tenancy existed, the tenant would indeed have been bound until May 31, 2001. In short, § 704.19 is of no assistance in resolving the present dispute.

---

[2] WISCONSIN STAT. § 704.19(6) provides as follows:

Tenant moving out without notice. If any periodic tenant vacates the premises without notice to the landlord and fails to pay rent when due for any period, such tenancy is terminated as of the first date on which it would have terminated had the landlord been given proper notice on the day the landlord learns of the removal.

[3] The portion of WIS. STAT. § 704.19(2)(b) relied on by the landlord reads as follows:

A periodic tenancy can be terminated by notice under this section only at the end of a rental period. In the case of a tenancy from year-to-year the end of the rental period is the end of the rental year even though rent is payable on a more frequent basis.

¶ 20. The landlord next claims that WIS. STAT. § 704.29, properly interpreted and applied to the present facts, also compels a conclusion that the landlord's dealings with the tenant's successor were nothing more than her attempt to discharge her obligation to re-rent the premises in mitigation of the tenant's damages. She notes that § 704.29(1) provides:

> If a tenant unjustifiably removes from the premises prior to the effective date for termination of the tenant's tenancy and defaults in payment of rent, . . . the landlord can recover rent and damages except amounts which the landlord could mitigate in accordance with this section, unless the landlord has expressly agreed to accept a surrender of the premises and end the tenant's liability.

The landlord further relies on § 704.29(4), which provides that a landlord may "[r]erent[] the premises . . . with rent applied against the damages caused by the original tenant and in reduction of rent accruing under the original lease." Section 704.29(4)(b). The landlord claims that this is precisely what she did when she permitted the tenant's successor to remain on the premises and accepted rent from him. She asserts that she has applied all of the rent she received from the successor to reduce the damages and unpaid rent she is seeking to collect from the tenant. According to the landlord, her dealings with the tenant's successor were both required and privileged acts in mitigation on her part, and her actions cannot therefore be used to "defeat the landlord's right to recover rent and damages and do not constitute an acceptance of surrender of the premises." WIS. STAT. § 704.29(4).

¶ 21. We agree with the landlord that whether the landlord's dealings with the tenant's successor were actions in mitigation or constituted her acceptance of

the tenant's surrender of the premises is the dispositive issue in this litigation. Both the supreme court and this court have addressed the issue and, in so doing, both courts discussed the proper application of the provisions of Wis. Stat. § 704.29 on which the landlord relies. We thus turn to those discussions.

¶ 22. The commercial tenant in *First Wisconsin Trust Co. v. L. Wiemann Co.*, 93 Wis. 2d 258, 286 N.W.2d 360 (1980), vacated leased premises some nine years prior to the end of the lease term. The tenant argued that the landlords had accepted the surrender of the premises when they sold the building several months after the tenant had vacated it. *Id.* at 270–71. The supreme court agreed, explaining that "[t]he act of selling the property in February, 1973, evidences a clear intent to make the election between accepting the surrender and terminating the lease, and entering and taking possession of the premises for the purpose of mitigating damages." *Id.* at 274. Even though the landlords maintained at the time of the sale that they intended to pursue the former tenant for breach of the lease, the court found this expression of intent to be inconsistent with the landlords' conduct in selling the building, concluding, essentially, that actions speak louder than words. *Id.* at 274.

¶ 23. Earlier in its analysis, the supreme court quoted from the same statute on which the present landlord relies, Wis. Stat. § 704.29(4), in support of its conclusion that the landlords in *Wiemann* had *not* accepted a surrender of the premises when they re-rented a portion of the premises prior to the sale. *See id.* at 272. The court explained that a landlord's re-renting of the premises is an "equivocal" act, which, standing alone, does not establish that the landlord has chosen either to accept surrender or to mitigate the tenant's damages. *Id.* " 'The right to elect which course he will

740

pursue remains with the landlord until he makes his election by taking some step which clearly evidences an intent to make a choice between the two inconsistent remedies that are open to him . . . .' " *Id.* at 271 (citation omitted).

¶ 24. We relied on the *Wiemann* analysis in *CSS North Henry, LLC v. Tully*, 2001 WI App 8, ¶¶ 11, 13, 240 Wis. 2d 534, 624 N.W.2d 847. We also independently considered the language of WIS. STAT. § 704.29, in particular the subsections on which the present landlord relies: (1) mitigation required "unless the landlord has expressly agreed to accept a surrender of the premises and end the tenant's liability"; and (4)(b) re-renting not an acceptance of surrender. *See Tully*, 240 Wis. 2d 534, ¶¶ 19–21. We concluded that these subsections did "not change the common law rule that gives the election of the remedy for a tenant's breach to the landlord." *Id.*, ¶ 20. We further concluded the statutory provisions did not undermine our determination that, based on the common law as expressed in *Wiemann*, the landlord's actions constituted an acceptance of the former tenant's surrender of the leased premises:

> Here, CCS North Henry has refused to apply the rents received from Army Store to Tully's obligation under her lease, even though Tully requested that it do so. Additionally, it rented to Army Store for a period of time beyond that covered by Tully's lease. Therefore, under the undisputed facts of this case, we conclude that, as a matter of law, CCS North Henry elected to accept surrender when it obtained Army Store as its tenant for the premises. In making this election, it capped Tully's damages at the date of Army Store's tenancy, and therefore it cannot look to Tully for any damages beyond June 1, 1999.

*Id.*, ¶ 14 (footnote omitted).

¶ 25. Based on the discussions in *Wiemann* and *Tully*, and on our own reading of the statute, we conclude that WIS. STAT. § 704.29(4) does not preclude a court from determining that a landlord, by his or her conduct, clearly evidenced an intent to accept surrendered premises, even if the landlord's conduct includes the re-renting of the premises. We further conclude that the statute also does not prevent a court from determining that a landlord, by his or her actions, clearly evidenced the intent to accept a surrender, even where the landlord has not "expressly agreed to accept a surrender of the premises." *See* § 704.29(1). Rather, the statute, as applied here, imposes two requirements. First, whenever a landlord does not, by word or deed, accept the surrender of leased premises following a tenant's removal, the landlord must mitigate damages by attempting to re-rent the premises. Second, if a landlord elects to hold the tenant to the tenancy, the statute provides that the landlord's re-renting the premises to another cannot, standing alone, "constitute an acceptance of surrender of the premises." *See* § 704.29(4).

¶ 26. We now apply our understanding of the statutory provisions to the facts before us. As we have described, the landlord in this case did more than simply re-rent the premises to the tenant's successor. The landlord proposed to the successor a new lease with higher rents and a term extending well beyond the expiration of the tenant's obligations on May 31, 2001. The landlord received and accepted from the successor the higher rent she specified in the proposed lease for five months until the successor vacated the premises. When the successor informed the landlord in November 2000 that he intended to vacate, the landlord's response

was to inform the successor, but *not* her former tenant, that "you [the successor] are responsible until May 31, 2001 for rent of this unit." At no time between August 2000, when she was informed of the transfer of the business to the successor, and February 2001, after the successor had vacated, did the landlord communicate in any way to the tenant that she intended to hold him responsible for the obligations of a hold-over tenant through May 31, 2001.

¶ 27. We conclude that the landlord's actions in dealing exclusively with the successor, proposing a new long-term lease to the successor, accepting higher rent from the successor as called for in the proposed lease, and failing to communicate in any way to the tenant that she deemed him responsible for the tenancy through May 31, 2001, " 'clearly evidence[d] an intent' "[4] to accept the tenant's surrender of the premises.

¶ 28. The landlord points out, however, that her counsel informed the tenant in the letter of February 5, 2001, that the landlord had "offered [the successor] a lease, but he refused to sign it. Had he signed a new lease with us, [the landlord] would have released you from your existing lease." The landlord asserts that this shows she attempted to be "accommodating" and "gracious[]" in the face of the tenant's unauthorized subletting of the premises. We reject this characterization and conclude that the landlord's belated expression of an intent to accept the surrender only if she obtained a new lease with the successor cannot undo the effect of her actions during the six months that preceded it. The landlord's actions and exclusive dealings with the successor in and after August 2000 constituted her accep-

[4] *First Wisconsin Trust Co. v. L. Wiemann Co.*, 93 Wis. 2d 258, 271, 286 N.W.2d 360 (1980) (citation omitted).

tance of the tenant's surrender, which acceptance could not thereafter be revoked because her expectation of a new long-term lease did not come to fruition.

¶ 29. Finally, the landlord argues that, because the tenant's successor never executed a long-term lease with her, the successor never actually became her tenant and, thus, the tenant's obligations as a hold-over tenant continued. We reject this contention as well. Although it is true that the landlord and the successor never entered into a lease agreement for a fixed term, the landlord permitted the successor to occupy the premises for five months and accepted the rent payments he tendered in the amount the landlord had specified. We conclude that the landlord plainly accepted the successor as her tenant, either as a month-to-month "periodic tenant" or as a "tenant at will." *See* WIS. STAT. § 704.01(2) and (5) (defining quoted terms).[5]

---

[5] The landlord also makes a somewhat curious argument that the premises were never actually "vacated" because the sale of the tenant's business to his successor was accomplished by way of a sale of corporate stock. The landlord tells us that, shortly after the tenant leased the premises from her, he incorporated his laundry and dry-cleaning business. Thereafter, "his corporation . . . paid rent . . . and operated the laundry business out of the Leased Premises." The sale to the tenant's successor was effected by a sale of stock, following which the corporation continued to operate on the premises and pay the rent. According to the landlord, "nothing legally changed" and the landlord's "acceptance of rent from [the successor]'s corporation—or subsequent communications with [the successor]—does not serve to terminate [tenant]'s Lease with [the landlord]."

Not only do we fail to grasp the logic of this argument, but one might also use these same facts to assert that the corporation in question was the de facto hold-over tenant of the premises, and that the landlord's sole remedy is to sue the

¶ 30. In sum, the tenant's notice to the landlord in August 2000 that he had vacated the premises by selling his business to another required the landlord to choose between two courses of action. If she desired·at that time to hold the tenant, either absolutely or conditionally, to any future obligations regarding the premises, she should have told him precisely that before beginning five months of dealing exclusively with the tenant's successor. *See Tully*, 240 Wis. 2d 534, ¶ 11 (A landlord's options are to "accept the tenant's surrender" or to "*notify the tenant* that it is re-entering and re-letting . . . for the tenant's benefit." (emphasis added)). Instead, the landlord essentially ignored the tenant for six months and took actions that clearly evidenced her intent to re-rent the premises for her own benefit. By her conduct, the landlord accepted the tenant's surrender of the premises, thereby releasing him from any further obligations. Having accepted the surrender, she could not undo her election after the successor's tenancy abruptly ended by then attempting to pursue her former tenant for damages. The trial court did not err in dismissing the landlord's claims.

corporation for the rent and other obligations for the period in question. Moreover, the landlord's actions were inconsistent with her present suggestion that, because of the corporate rent payments, she was unaware of any change in who was responsible for the obligations of the occupancy of the premises. The tenant informed the landlord of the business transfer in August 2000, and the landlord thereafter directed all of her correspondence and communications to the successor. Moreover, the landlord's letters to the successor in August and November, and her attorney's letter of February 5, 2001, to the tenant, demonstrate that the landlord knew that the tenant had sold the business and that his successor was responsible for ensuring the rent was paid after August 2000.

¶ 31. The final issue we must address is the trial court's award to the tenant of his costs and actual attorney fees in successfully defending against the landlord's claims. The trial court found authority for awarding attorney fees in paragraph 20 of the parties' expired lease:

> 20. Legal costs and expenses. In any legal proceeding instituted by either party for the enforcement of the terms and provisions of this lease, the successful party shall be reimbursed by the other party for all reasonable costs, expenses and attorneys' fees.

The landlord argues this was error because, in prevailing, the tenant established that his obligations under the lease terminated in August 2000, which would also mean that no provisions of the parties' lease were effective after that month. Thus, in the landlord's view, the court could not rely on paragraph 20 of the lease as authority for awarding fees and costs to the tenant because, given the court's other conclusions, the lease no longer governed the parties' relationship at the time the landlord filed suit. We reject the landlord's contention.

¶ 32. The landlord cited paragraph 20 of the lease in her complaint to support her own claim to recover attorney fees and costs from the tenant. It is true, of course, that in order to prevail on her claims against the tenant, the landlord, unlike the tenant, needed to establish the continued viability of the lease provisions by persuading the court that the tenant's holdover, year-to-year tenancy remained in effect through May 31, 2001. In other words, had the landlord been successful on the merits, the provisions of the lease would still have been in effect during the holdover tenancy, *see*

WIS. STAT. § 704.25(3), and she would have been entitled to an award of fees and costs under paragraph 20.

¶ 33. Paragraph 20 of the parties' lease, however, is not a one-sided fee-recovery provision in favor of the landlord. It is a reciprocal provision that authorizes attorney fees to be shifted from "the successful party" to the losing party "[i]n any legal proceeding instituted by either party for the enforcement of the terms and provisions of this lease." That is precisely the nature of the present action. It is a "legal proceeding instituted by" the landlord to enforce "the terms and provisions" of the parties' lease, in which the tenant has become the "successful party." It makes no difference to the operation of paragraph 20 that the tenant, in order to successfully defend, established that the lease provisions were no longer effective after August of 2000. Under the attorney fee provision in the parties' lease, it is the nature of the plaintiff's claims, not the theory of defense, that determines whether the prevailing party is entitled to recover his or her attorney fees.

¶ 34. The landlord does not argue that the attorney fees and costs awarded were unreasonable. Accordingly, we conclude there is no basis to disturb the amounts the trial court awarded to the tenant in the appealed judgment.

## CONCLUSION

¶ 35. For the reasons discussed above, we affirm the appealed judgment.

*By the Court.*—Judgment affirmed.