COURT OF APPEALS
DECISION
DATED AND FILED

June 26, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1829**

STATE OF WISCONSIN

Cir. Ct. No. **2024SC4014**

IN COURT OF APPEALS
DISTRICT IV

---

TYLER J. ANDERSON AND AMBER J. ANDERSON,

  PLAINTIFFS-RESPONDENTS,

 V.

MADISON CELLULAR TELEPHONE COMPANY,

  DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Affirmed*.

¶1 TAYLOR, J.[1] Since 1999, Madison Cellular Telephone Company ("MCTC") has operated wireless communication facilities, including a cellular

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

tower and related structures ("the facilities"), on a plot of land currently owned by Tyler and Amber Anderson ("the Andersons"). For most of this time, the land on which the facilities stand was subject to a twenty-five-year lease that went into effect in March 1999 and expired in March 2024. Rent was paid annually under the lease. In September 2023, prior to the expiration of the lease, the Andersons sent a notice to MCTC that if the facilities continued to occupy the land after the expiration of the lease, a month-to-month tenancy would be created requiring a monthly—not annual—payment of a higher rent. In May 2024, after the original lease had expired and MCTC had made monthly rental payments, the Andersons sent a letter to MCTC notifying it that they intended to terminate the tenancy on or before June 14, 2024. The facilities remained on the land past June 14, 2024. On June 20, 2024, the Andersons filed this eviction action. After the parties filed a stipulation of facts and briefs, the circuit court issued a written decision and order and a Judgment of Eviction in favor of the Andersons and against MCTC. The court stayed the execution of the eviction. MCTC appeals.

¶2     MCTC's principal argument on appeal is that after the expiration of the 25-year lease, it entered into a year-to-year tenancy with the Andersons by operation of statute. MCTC argues that because this year-to-year tenancy would have lasted until at least March 2025, the Andersons were not free to seek eviction in June 2024. I reject this argument because the parties instead contracted for a month-to-month tenancy. Thus, either party was free to terminate the tenancy at the end of any monthly term. I further conclude that the Andersons gave adequate notice of the termination of the tenancy to MCTC. Accordingly, I affirm.

**BACKGROUND**

¶3 The following facts are undisputed. In 1998, MCTC's corporate predecessor signed a lease agreement with Tyler Anderson's parents, the then-owners of the land at issue, for the purpose of operating the facilities. The lease required MCTC to make one annual rent payment at the beginning of each year of the tenancy. The lease period commenced on March 15, 1999, and MCTC exercised all four of its contractual options to extend the lease, which came to an end 25 years later, on March 15, 2024.[2]

¶4 In September 2023, about six months before the original lease was to expire, the Andersons, who now owned the land subject to the lease, sent MCTC a document that they called a "Notice of Protective Termination" ("the 2023 notice").[3] The 2023 notice stated that if MCTC's facilities continued to occupy the land beyond the March 15, 2024 expiration of the original lease, "such occupancy shall be deemed to be a month-to[-]month tenancy." The notice further stated that the rent for such a tenancy would be paid monthly, rather than annually as under the original lease, and would also be increased to three times the original rental rate. Finally, the notice stated that "[a]ny acceptance of rent or other

---

[2] On appeal, MCTC alleges for the first time that the original lease terminated on March 31, 2024. However, MCTC stipulated to a March 15 termination date during the circuit court proceedings, the parties treated this date as the original lease expiration date in those proceedings, and the court made this factual finding. Therefore, I will not consider MCTC's assertion of a new lease termination date for the first time on appeal. *See Siegel v. Leer, Inc.*, 156 Wis. 2d 621, 628, 457 N.W.2d 533 (Ct. App. 1990) ("A party will not be heard to maintain a position on appeal inconsistent with that taken in the [circuit] court.").

[3] A "Notice of Protective Termination" does not appear to be a legal term of art. This opinion will use the phrase "2023 notice" to describe this document in order to distinguish it from the "Notice Terminating Tenancy" ("the 2024 notice") the Andersons sent to MCTC in May 2024.

conduct by the landlord shall not be deemed to create a new or additional tenancy, other than on a month-to-month basis, subject to the other terms as provided in the Lease, except that there shall be no additional option to extend the term of the Lease and all renewal options shall be deemed to have been removed from the Lease." The notice was signed by both Tyler and Amber Anderson. No space was provided for any other signature.

¶5 MCTC's facilities continued to occupy the land after the original lease expired on March 15, 2024. Beginning that month and continuing each month through June 2024, when this eviction action was filed, MCTC sent the Andersons a monthly check for the new rent amount that was set forth in the 2023 notice.

¶6 In May 2024, counsel for the Andersons sent MCTC a letter with the subject heading "Notice Terminating Tenancy" ("the 2024 notice") and referring to "a certain Lease Agreement dated September 21, 1998, as amended."[4] The letter stated that the Andersons were terminating the lease and required that MCTC "remove its business and its wireless communications facility" from the land on or before June 14, 2024.

¶7 MCTC did not remove the facilities from the land within this time period, and on June 20, 2024, the Andersons filed the complaint seeking eviction. MCTC filed an answer in which it asserted that it had entered into "a periodic tenancy agreement" with the Andersons and attached the 2023 notice. MCTC

---

[4] The letter's reference to the original, 1998 lease is plainly in error; all parties agree that this lease had expired several months prior to the 2024 notice. Whether this error rendered the 2024 notice insufficient to terminate MCTC's tenancy is discussed in Part III of this opinion.

specifically noted that it had "made monthly payments of rent subject to [the 2023 notice] through which the parties agreed to create a periodic tenancy in the event of such monthly rent payments." During the circuit court proceedings, MCTC altered its position and argued that it never reached an agreement with the Andersons for a month-to-month tenancy but rather that the tenancy was year-to-year.

¶8 In lieu of a trial, the parties stipulated to a set of facts and submitted written briefs to the circuit court. The court issued a written decision and order in favor of the Andersons granting eviction against MCTC. MCTC filed a circuit court-approved undertaking, thereby staying the execution of the eviction order. *See* WIS. STAT. § 799.445. MCTC appeals.

## DISCUSSION

### I. Standard of Review

¶9 As stated, the facts necessary to decide this appeal are stipulated by the parties. Resolving the case requires application of statutory and common-law rules to these undisputed facts, which this court performs independently of the circuit court while benefitting from its analysis. *See Consolidated Papers, Inc. v. Dorr–Oliver, Inc.*, 153 Wis. 2d 589, 595, 451 N.W.2d 456 (Ct. App. 1989); *Ellifson v. West Bend Mut. Ins. Co.*, 2008 WI App 86, ¶13, 312 Wis. 2d 664, 754 N.W.2d 197.

¶10 This case also requires that this court interpret statutory language. "'[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect.'" *Heritage Farms, Inc. v. Markel Ins. Co.*, 2012 WI 26, ¶26, 339 Wis. 2d 125, 810 N.W.2d 465

(quoting *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110). I begin my analysis by examining the language of the statute itself because I assume that legislative intent is expressed in the statutory language. *Heritage Farms, Inc.*, 339 Wis. 2d 125, ¶26. I give statutory language "its common, ordinary, and accepted meaning," and I may consult a dictionary to assist in determining a statute's meaning. *Kalal*, 271 Wis. 2d 633, ¶45; *New Richmond News v. City of New Richmond*, 2016 WI App 43, ¶41, 370 Wis. 2d 75, 881 N.W.2d 339.

## II. The Parties Entered Into a Month-to-Month Tenancy Agreement

¶11 When the original lease expired on March 15, 2024, MCTC continued to operate the facilities on the land it had previously leased. The dispute in this case is about what legal arrangement governed MCTC's continued occupation of the land after the original lease expired, or in statutory terms, after MCTC "held over."

¶12 When a tenant remains in possession of a landlord's property after the expiration of a lease, pursuant to WIS. STAT. § 704.25 and *Vander Wielen v. Van Asten*, 2005 WI App 220, ¶15, 287 Wis. 2d 726, 706 N.W.2d 123, there are three possible results. First, the landlord may elect to evict the tenant. *See* § 704.25(1). Second, the landlord may elect to permit the tenant to remain and to begin a periodic tenancy under most of the same terms as the original lease. *See* § 704.25(2) and (3). Where (as here) the expired lease was for nonresidential use and lasted for one year or longer, the resulting periodic tenancy is year-to-year. *See* § 704.25(2)(a). While the statute speaks in terms of the landlord's "election,"—that is, choice—it is possible for a landlord to enter such a year-to-year tenancy unwittingly because the landlord's "[a]cceptance of rent for any

period after expiration of a lease … constitutes an election by the landlord under this section unless the landlord has already commenced proceedings to remove the tenant." Sec. 704.25(2)(c). The third possibility is that the landlord and tenant reach some other agreement. *See* § 704.25(4). The statute provides that such an alternative arrangement can be made "either by the terms of the lease itself or by an agreement at any subsequent time." *See* § 704.25(4).

¶13 Here, after the original lease expired and MCTC began to hold over, the Andersons did not initially seek eviction, so the first statutory possibility did not come to pass. The disagreement between the parties is about which of the other two statutory possibilities occurred. The Andersons argue that the parties reached a month-to-month agreement, and therefore, the default rule of a year-to-year tenancy does not apply. MCTC argues that by statute, a year-to-year periodic tenancy resulted.

¶14 I conclude that the parties entered a new, month-to-month periodic tenancy pursuant to WIS. STAT. § 704.25(4) instead of the default year-to-year tenancy pursuant to § 704.25(2), and that it is this month-to-month arrangement that governs MCTC's tenancy. This month-to-month agreement came about when, after the Andersons had sent MCTC the 2023 notice offering a month-to-month tenancy at a higher rent, MCTC responded by paying the increased rent on a monthly basis for each month from March through June consistent with the Andersons' offer. By acquiescing to the Andersons' offer concerning the timing and the amount of the rent payments, MCTC entered a "unilateral contract" establishing a month-to-month tenancy.

¶15 "[B]y definition, a unilateral contract consists of a promise in exchange for performance." *Habel v. Estate of Capelli*, 2020 WI App 15, ¶21,

391 Wis. 2d 399, 941 N.W.2d 858. A unilateral contract "is typified by the law school hypothetical situation where A says to B, 'If you walk across [the] Brooklyn Bridge, I promise to pay you ten dollars.' A has made a unilateral contract which arises when—and if—B performs the act." *Paulson v. Olson Implement Co.*, 107 Wis. 2d 510, 517 n.6, 319 N.W.2d 855 (1982) (citation omitted). The offeree's performance must be made with the intent to accept the offer, but this intent may be inferred by the performance itself. *Schlosser v. Allis-Chalmers Corp.*, 86 Wis. 2d 226, 237, 271 N.W.2d 879 (1978).

¶16 As applied here, in the 2023 notice, the Andersons confirmed that the previous 25-year lease would not be extended and tendered a promise to MCTC. That promise was that if MCTC made the more frequent and higher rent payments the Andersons offered, MCTC's facilities could remain on the land until either party terminated the tenancy. MCTC did make those payments.[5] As a result, the parties entered a new, month-to-month tenancy agreement pursuant to WIS. STAT. § 704.25(4) instead of the default year-to-year tenancy pursuant to § 704.25(2), and that it is this month-to-month arrangement that governs MCTC's tenancy. Accordingly, the Andersons were free to terminate MCTC's tenancy in May 2024 rather than in March 2025.

---

[5] The Andersons represented to the circuit court that they never deposited or cashed the monthly checks that MCTC sent, and instead kept them. MCTC told the court that the Andersons never communicated this fact to MCTC before the litigation. As stated correctly by the court, the Andersons' handling of the rent checks does not affect whether a unilateral contract was formed because "for purposes of contract formation … what matters is not the offeror's actions but the offeree's intent. That intent is manifest from [MCTC]'s payment of the checks, regardless of what the Andersons did thereafter." Therefore, I do not consider the Andersons' failure to deposit the monthly rent checks dispositive to any issue on appeal and do not address it further.

¶17    MCTC argues that a year-to-year tenancy was created by default pursuant to WIS. STAT. § 704.25(2) after MCTC's holdover because there was no unilateral contract that created different tenancy terms. Therefore, MCTC asserts that the Andersons had no right to terminate the tenancy in May 2024, just a few months after it commenced.

¶18    In arguing that there was no unilateral contract, MCTC does not challenge the circuit court's factual finding that MCTC made the higher, more frequent rent payments with the intent to accept the Andersons' offer for a month-to-month tenancy as communicated in the 2023 notice. The court found such intent because "other than acceptance of the Andersons' offer, there is no other plausible reason—and [MCTC] suggests none—to explain why a company would continue to use leased space while providing payment at precisely the rate and schedule demanded by the landlord's offer of tenancy." What's more, MCTC's initial position in this litigation was explicit that it had accepted the Andersons' offer: its answer to the eviction complaint declared that it had "made monthly payments of rent subject to [the 2023 notice] through which the parties agreed to create a periodic tenancy in the event of such monthly rent payments."

¶19    MCTC instead offers two arguments that, even though the parties agreed to a month-to-month tenancy, this agreement was invalid. First, MCTC claims that WIS. STAT. § 704.25(4)—which provides that the statutory year-to-year tenancy is not created in a holdover situation if there is a "contrary agreement" between the parties—imposes the limit that such a "contrary agreement" may not be made while the original lease is still in effect. In other words, MCTC argues that the 2023 notice could not create an enforceable agreement because it violated the statutory requirement that such an agreement be made after the original lease has expired. Second, MCTC argues that the Andersons' offer was "illusory"

because it did not constrain the Andersons in any meaningful way and therefore lacked consideration. As a result, MCTC concludes, this offer was incapable of ripening into a contract. For the following reasons, neither argument is persuasive.

A. WISCONSIN STAT. § 704.25(4) does not prevent a landlord and tenant from agreeing on a post-lease tenancy before the original lease expires.

¶20　　As noted, WIS. STAT. § 704.25(4) provides that when a tenant to a nonresidential, multi-year lease holds over, the statutory "default" of a year-to-year tenancy "governs except as the parties agree otherwise either by the terms of the lease itself or by an agreement at any subsequent time." MCTC argues that the phrase "at any subsequent time" means that in order for another agreement to govern, the parties could only reach such an agreement after the original lease expired and the holdover tenancy began. Because the Andersons made their offer of a month-to-month tenancy in September 2023—six months before the expiration of the original lease—MCTC argues that any agreement arising out of that offer is insufficient in overcoming the statutory year-to-year default tenancy.

¶21　　I reject MCTC's interpretation of WIS. STAT. § 704.25(4). The statutory phrase "or by an agreement at any subsequent time" immediately follows the phrase allowing the parties to make and formalize an agreement about what happens after a lease expires when drafting "the lease itself." Sec. 704.25(4). MCTC states that the word "subsequent" means "following in time, order, or place." *Subsequent*, MERRIAM-WEBSTER.COM, https://www.merriam-webster .com/dictionary/subsequent (last visited June 16, 2025). When applying this definition, I conclude that an agreement reached "at any subsequent time" means an agreement that occurs after the original lease has been agreed to, not after that lease has expired. MCTC points to nothing in the statutory language to support an

interpretation that an agreement cannot be reached until after the original lease *expired.* There is no language in the statute to suggest that this clause precludes the parties from entering into a future agreement during the existence of the original lease. I will not add words to the text of a statute. *State v. Neill*, 2020 WI 15, ¶12, 390 Wis. 2d 248, 938 N.W.2d 521.

¶22 I must also interpret statutory language "in the context in which it is used; not in isolation but as part of a whole … to avoid absurd or unreasonable results." *Kalal*, 271 Wis. 2d 633, ¶46. It would be unreasonable to interpret the clause "or by an agreement at any subsequent time" to prohibit the parties to an existing lease from reaching an agreement about their post-lease arrangements until after that lease has expired and a holdover situation has been created. If MCTC's reading of the statute were correct, even an explicit, signed agreement for a post-lease month-to-month tenancy would be invalid unless the parties delayed reaching this agreement until the original lease had expired. Landlords and tenants would be forced to wait until they had entered a situation of precarity— that is, until the tenant was occupying the landlord's property as a holdover tenant with no tenancy agreement—before they could enter into a post-lease tenancy agreement. During this period, because the parties would have no agreement, either the landlord or the tenant would be free to walk away, leaving the other party in the lurch about finding another tenancy or finding another tenant. MCTC offers no argument as to why this court should interpret WIS. STAT. § 704.25(4) to bring about such an unreasonable limitation on a landlord's and a tenant's ability to reach a mutually desired agreement regarding future tenancies when the statutory language establishes no such limitation.

B.  The Andersons' offer for a month-to-month tenancy was not illusory.

¶23    MCTC also argues that the Andersons' 2023 notice could not ripen into a unilateral contract because the only promises the Andersons made were illusory.  "An illusory promise is a promise in form only: one that its maker can keep without subjecting [the maker] to any detriment or restriction."  ***Devine v. Notter***, 2008 WI App 87, ¶4, 312 Wis. 2d 521, 753 N.W.2d 557.  Because an illusory promise puts no detriment or obligation on the promisor, an illusory promise is not consideration; in the absence of consideration, there can be no contract.  ***Id.***

¶24    MCTC argues that the Andersons' offer of a month-to-month tenancy in the 2023 notice was illusory because the Andersons "did not 'promise to do anything or commit to put [themselves] at any disadvantage or face any detriment.'  Instead, they attempted to alter the Lease by inserting new terms that worked solely to their benefit."  (citation omitted).  This argument misconstrues both the nature of the Andersons' offer and the legal situation that existed when the Andersons sent MCTC the 2023 notice.  That situation, in September 2023, was that the Andersons and MCTC were approaching the end of the original lease term, set to expire on March 15, 2024.  When the lease expired, the Andersons, as owners of the previously-leased land, would be free to remove MCTC's facilites, resorting to eviction proceedings if necessary.  WIS. STAT. §§ 704.23, 704.25(1).  MCTC would have no right to maintain the facilities on the land after the lease expired unless the Andersons either: (1) permitted MCTC to remain and accepted its continued rent payments, thereby creating a statutory year-to-year tenancy under § 704.25(2); or (2) came to an alternative agreement with MCTC, thereby creating a different tenancy agreement under § 704.25(4).

¶25 In the 2023 notice, the Andersons made an offer for such an alternative agreement: MCTC's facilities could continue to occupy the land on a month-to-month basis, provided that MCTC paid the increased monthly rent the Andersons proposed. MCTC's argument is that this offer did not commit the Andersons to any "disadvantage" or "detriment" because the difference between the original lease and the 2023 notice's terms—presumably, the 2023 notice's demand of a higher rent paid at a more frequent basis—was favorable solely to the Andersons. From these facts, MCTC asserts that the Andersons, by the 2023 notice, had given up nothing in exchange for the higher, more frequent rent payments, and therefore had made only an illusory promise.

¶26 The false premise in MCTC's argument is that it treats the terms of the original lease as the baseline for the parties' legal obligations and extends those obligations into perpetuity. In line with this erroneous view, MCTC repeatedly claims that the terms offered in the 2023 notice were "amendments" to the original lease. But this is not accurate because, as stated, that lease was set to expire on March 15, 2024. If the lease expired with no other agreement reached, the Andersons would be free to remove MCTC's facilities from the land (and to recover damages if MCTC refused to timely remove the facilities pursuant to WIS. STAT. § 704.23). *This* potential situation—in which MCTC had no right whatsoever to keep operating the facilities on the Andersons' land—is the baseline against which the offer in the 2023 notice must be judged to determine whether it placed any real obligations on the Andersons.

¶27 The 2023 notice did impose obligations on the Andersons because it gave MCTC the right to keep the facilities on the Andersons' land so long as MCTC paid the higher rent on a monthly basis and neither party took steps to terminate the tenancy. In the 2023 notice, the Andersons offered to keep hosting

the facilities on the Andersons' land on a month-to-month basis, in exchange for a specified monthly rent. Permitting the facilities to remain on the land the Andersons owned—rather than using the land themselves or perhaps leasing it to some other entity—was an "obligation" or "detriment" the Andersons would be incurring through the bargain laid out in the 2023 notice. Therefore, their offer was not illusory.

¶28 Because the Andersons, by the 2023 notice, conveyed an offer for a post-lease month-to-month tenancy, and MCTC, by its performance in making the monthly payments at the requested amount as set forth in the 2023 notice, accepted the offer, a unilateral contract was established. This fact also distinguishes *Vander Wielen*, 287 Wis. 2d 726, on which MCTC relies to support its argument that no month-to-month tenancy was established. In *Vander Wielen*, as a commercial lease was coming to an end, the tenant informed the landlord that the tenant did not intend to remain in the leased space for longer than it took the tenant to sell his business. However, the two parties never reached an agreement about a post-lease tenancy. *Id.*, ¶12. Thus, when the landlord accepted the tenant's post-lease rent check, the statutory year-to-year tenancy commenced. *Id.* Here, in contrast, the Andersons and MCTC reached a "contrary agreement," preventing the statutory year-to-year tenancy from being created. WIS. STAT. § 704.25(4).

### III. The 2024 Notice Properly Terminated the Month-to-Month Tenancy

¶29 MCTC also argues that, even accepting that it had a month-to-month tenancy, the Andersons' 2024 termination notice did not "substantially inform [MCTC] … of the intent to terminate the tenancy" as required by WIS. STAT. § 704.19(4). MCTC's specific complaint is that the 2024 notice, although it was

given in May 2024 after the original lease had expired, nevertheless stated that the notice was "in reference to a certain Lease Agreement dated September 21, 1998, as amended."

¶30 I agree with the circuit court that there was no possibility that this error in the Andersons' 2024 notice caused MCTC to be misinformed of the necessary facts concerning the tenancy that was being terminated. The 2024 notice identified the property at issue and informed MCTC of the date of the termination of the tenancy. And MCTC has not alleged any actual confusion about the 2024 notice's message that the Andersons intended to end MCTC's tenancy on the land the facilities occupied. The statute provides that a "notice is not invalid because of errors in the notice which do not mislead." WIS. STAT. § 704.19(4). Therefore, I conclude that the 2024 notice terminating the month-to-month tenancy was valid.

## CONCLUSION

¶31 I affirm the circuit court's order granting eviction and restitution of the premises in favor of the Andersons and against MCTC. I remand to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.